**MICRO–SPARC, INC.,**
**Plaintiff, Appellee,**

v.

**Michael WEINSTOCK,**
**Defendant, Appellant.**

**Nos. 84–1642, 84–1801.**

United States Court of Appeals,
First Circuit.

Argued Feb. 5, 1985.

Decided April 3, 1985.

James B. Krasnoo, Boston, Mass., with whom Norris, Kozodoy & Krasnoo, Boston, Mass., was on brief, for defendant, appellant.

Mark D. Shuman, Boston, Mass., for plaintiff, appellee.

Before BREYER and ALDRICH, Circuit Judges, and PETTINE,* Senior District Judge.

BREYER, Circuit Judge.

Michael Weinstock, the appellant, worked as advertising manager of *Nibble* magazine. Micro-Sparc, Inc., *Nibble*'s owner, allowed Weinstock to buy 1,000 Micro-Sparc shares as part of his compensation. After about a year Micro-Sparc discharged Weinstock. It then tried to repurchase the 1,000 shares, pointing to a provision in an Agreement with Weinstock that said

> In the event Weinstock, for any reason, ceases to be an employee, he shall forthwith, upon the termination of his employment, tender to Harvey [Micro-Sparc's president] all of his shares in the Corporation....

Weinstock refused to sell the shares back. Micro-Sparc brought this diversity suit, seeking specific performance and damages. And, Weinstock filed counterclaims alleging wrongful discharge.

On October 18, 1983, Micro-Sparc filed a motion for partial summary judgment, asking the court for specific performance. Weinstock replied with documents that op-

posed the summary judgment motion and asked for a continuance. But the documents provided no detailed response to Micro-Sparc's motion, nor did Weinstock attach any supporting affidavits or memoranda. Instead, on March 6, 1984, Weinstock wrote a letter to the clerk of court stating that he needed more time to prepare affidavits. Subsequently, on July 2, 1984, the district court granted Micro-Sparc's partial summary judgment motion and ordered specific performance. In doing so, the court noted that it accepted Micro-Sparc's interpretation of the relevant contractual provisions.

Weinstock then asked the court to reconsider its decision; and this time he submitted supporting affidavits and memoranda. The court refused to do so both because Weinstock was late in submitting his support and because that support was too weak to change the outcome. Weinstock now appeals, challenging the court's original grant of partial summary judgment and its refusal to reconsider. After reviewing the record in detail, we conclude that the district court's decisions were legally proper.

■ 1. The basic legal question before the district court on Micro-Sparc's summary judgment motion was whether the contract's language meant that Micro-Sparc had the right to compel Weinstock to give up his shares when he was discharged. Weinstock makes two arguments. First, he points to the fact that the quoted language requires him to tender his shares not to Micro-Sparc but to Micro-Sparc's president. The contract's background and purposes, however, make clear that this language must be read as modified by a different part of the Agreement that says that on the occurrence of a certain event (an event that in fact occurred)

> the right of repurchase ... of Harvey [Micro-Sparc's president] shall cease and the right of the Corporation as provided in Paragraph 5 of the Articles of Organization shall revive....

* Of the District of Rhode Island, sitting by designation.

Weinstock does not seriously contest the relevance of this 'change of purchaser' provision here. Rather, he notes that this provision explicitly incorporates Paragraph 5 of the Articles of Organization; and that paragraph does not refer to *compelled repurchase upon discharge* but only to "any Stockholder ... *desiring* to sell or transfer ... stock ..." (emphasis added). Weinstock concludes from this fact that the contract did not create any right in Micro-Sparc to *compel* repurchase at his discharge.

The fatal flaw in this argument lies in the fact that Paragraph 5 of the Articles of Organization basically concerns procedures: it requires notice, a suggested price, a decision within thirty days, neutral valuation procedures, and so on. If read literally, the reference to Paragraph 5 does not eliminate the right to compel repurchase; it simply provides for the manner and means by which the compelled sale to the corporation will take place. A reading of the contract as a whole, particularly in light of its business background, confirms this literal reading, making clear that the reference to Paragraph 5 is procedural; one can find no convincing reason why the parties would have agreed to eliminate the compelled repurchase right.

■ Second, Weinstock argues that Micro-Sparc cannot ask for enforcement of the contract because no signature appears in the space provided for signature by a corporate officer. Micro-Sparc's president signed the Agreement as a party, however; he then presented it to Micro-Sparc's board of directors, which approved the Agreement and authorized the president to execute it on Micro-Sparc's behalf. Micro-Sparc is an intended beneficiary of the contract. Under the circumstances, Micro-Sparc can enforce the contract, *Rae v. Air-Speed, Inc.,* 386 Mass. 187, 435 N.E.2d 628, 632–33 (1982).

2. Weinstock challenges the district court's award of summary judgment, claiming that summary judgment was precluded by the existence of genuine issues of material fact, Fed.R.Civ.P. 56(c). He concedes, however, that the factual matters to which he points were not presented in affidavits submitted to the court until after the court had granted summary judgment. At the time the district court made its decision (eight months after Micro-Sparc had moved for summary judgment), Weinstock had filed only his unsupported opposition to Micro-Sparc's motion.

■ Fed.R.Civ.P. 56(e) specifically states that

When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

We have repeatedly held that this rule means what it says. *See Hebert v. Wicklund,* 744 F.2d 218, 221–22 (1st Cir.1984). *See also Packish v. McMurtrie,* 697 F.2d 23, 27 (1st Cir.1983); *Manego v. Cape Cod Five Cents Savings Bank,* 692 F.2d 174, 176 (1st Cir.1982); *Hahn v. Sargent,* 523 F.2d 461, 464–66 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). Since Weinstock had filed no affidavits or memoranda that "set forth specific facts showing that there is a genuine issue for trial;" the district court could reasonably conclude on the basis of the papers before it that there was no such issue.

■ Weinstock argues, however, that the court was wrong to decide the motion on the basis of the papers then filed. He points to the fact that he had filed a motion for continuance the preceding October. If Weinstock means by this that the district court *had* to grant him additional time to file affidavits, he is wrong. The court, in effect, gave Weinstock a continuance of more than eight months—more than enough time to obtain the depositions and other information listed in Weinstock's October "continuance motion." *Cf. Hebert v. Wicklund,* 744 F.2d at 221–22 (court need not relieve a litigant from "lack of diligence" in preparing the necessary affida-

vits); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d*, § 2740 at 535 (2d ed. 1983). Weinstock also wrote to the court clerk on March 6. But that letter does not require the court to grant a further continuance. It is not an affidavit calling the judge's attention to specific facts requiring additional time, *cf. Hebert v. Wicklund*, 744 F.2d at 222 (letter to clerk cannot rescue an otherwise inadequate summary judgment opposition). And, in any event, the letter implies that the affidavits will be forthcoming soon after April 6—nearly two months before the court decided the motion.

■ Weinstock's better argument is that the fact that the October continuance motion was pending, in conjunction with his March letter to the clerk, makes it unfair for the court to have acted on Micro-Sparc's summary judgment motion without a hearing, without setting a definite deadline for his affidavits, or without otherwise notifying him. The court wrote, in response to this claim,

> Defendant let the time pass for filing these documents. Counsel sought extensions of time, and finally averred that he would file them after April 6, 1984. By the end of June, nothing was forthcoming. It seems to me that it is reasonable for a judge to conclude that counsel had determined to rest on the record, and so I reviewed the record and allowed the plaintiff's motion.

We are less certain than the district court that the record shows plaintiff "had determined to rest," for it contains considerable material suggesting that defendant was making progress in obtaining depositions and exhibits needed for affidavits. We also note that a simple court-imposed deadline for filings—in a case where no hearing is set—would have avoided any uncertainty about whether a party intended to file additional papers. We need not, however, decide the precise nature of any such legal requirement here for the district court, in any event, reviewed plaintiff's "full submission," including legal memoranda, affidavits and 217 exhibits, on plain-

tiff's reconsideration motion. And, the record makes clear to us that this review eliminated any possible prejudice from lack of notice.

■ 3. Weinstock argues that the district court should have allowed his motion for reconsideration. The court, after reviewing all Weinstock's material, denied that motion in part because it concluded that summary judgment was still appropriate. We agree. The material Weinstock eventually filed, arguing the import of Paragraph 5 of the Articles of Organization, does not cast doubt on the correctness of the district court's interpretation of the contract, *see* pp. 791–792, *supra*.

■ Weinstock now argues that, in any event, it is 'inequitable' to force him to give back the shares without giving him a chance to prove Micro-Sparc discharged him wrongfully. But, this argument does not require a trial prior to return of the shares. Whether or not Weinstock eventually proves his wrongful discharge claims, enforcement of the contract's repurchase provisions is unlikely to hurt him significantly. The contract's repurchase provisions provide for a price set through neutral arbitration. Regardless, Weinstock presents no substantial reason why (if he proves his case) a damage award will not compensate him adequately for any harm. At the same time, Micro-Sparc convincingly argues that leaving Weinstock with the shares while he litigates may significantly harm the corporation. Micro-Sparc is a closely held corporation, with shares owned by only two or three individuals. Stock ownership by one who is not an employee—indeed, one unfriendly to the corporation—carries with it the right to receive information that could help Micro-Sparc's competitors. The history of the case suggests that delays are possible. Thus, insofar as Weinstock makes an 'equitable' argument, the 'equities' favor Micro-Sparc.

Under these circumstances, the district court was legally free to deny reconsideration.

The judgment of the district court is *Affirmed.*