**GABRIEL ST. SURIN, Appellant**

**v.**

**VIRGIN ISLANDS DAILY NEWS, INC.; BRODHURST PRINTERY, INC., d/b/a St. Croix Avis**

No. 93-7553

United States Court of Appeals

for the Third Circuit

April 15, 1994

RHYS S. HODGE, ESQ. (Argued), Charlotte Amalie, St. Thomas, V.I., *for Appellant*

ADRIANE J. DUDLEY, ESQ., (DUDLEY, CLARK & CHAN), Charlotte Amalie, St. Thomas, V.I., *for Appellee Virgin Islands Daily News, Inc.*

PRESENT: MANSMANN, HUTCHINSON and LEWIS, *Circuit Judges*

## OPINION OF THE COURT

HUTCHINSON, *Circuit Judge*

Appellant, Gabriel St. Surin ("St. Surin"), appeals an order of the District Court of the Virgin Islands granting summary judgment

for defendants, the Virgin Islands Daily News, Inc. ("Daily News") and Brodhurst Printery, Inc., d/b/a St. Croix Avis ("Avis"), in a defamation action involving articles the defendants published about St. Surin's activities at the Department of Public Works ("DPW"). The Daily News story inaccurately quoted a federal prosecutor as saying charges would be filed shortly against St. Surin. In fact, no federal criminal charges were ever filed against St. Surin. The Avis article similarly implied charges were imminent.

The district court, without resolving St. Surin's Federal Rule of Civil Procedure 56(f) applications for delay pending discovery, granted summary judgment for the Daily News and Avis. It held the material published was substantially true. We hold the district court abused its discretion when it decided the newspapers' summary judgment motions in their favor while St. Surin's Rule 56(f) applications were still pending before the district court and key discovery was outstanding. Alternatively, we hold the evidence presently before the court on the summary judgment issue left unresolved genuine issues of material fact on falsity and actual malice. Accordingly, we will reverse the district court's order granting summary judgment and remand the case for further proceedings consistent with this opinion.

The district court had subject matter jurisdiction under 48 U.S.C.A. § 1612 (West 1987). We have appellate jurisdiction over the district court's final order dismissing St. Surin's action against the Daily News and Avis with prejudice pursuant to 28 U.S.C.A. § 1291 (West 1993).

I.

St. Surin filed this defamation action on October 24, 1989, alleging two Virgin Islands newspapers published defamatory statements about him. In his claim against the Daily News, he contends that an article which appeared in that paper's Thursday, July 27, 1989, edition was false and defamed him. That edition carried a front-page story, headlined *"Charges near against DPW official—prosecutor,"* under the byline of reporter Abu Bakr. The body of the article stated "[a] federal prosecutor says charges are expected to be filed next week against a Public Works Department official" and named Assistant U.S. Attorney James Hurd as its source. According to the story, Hurd had confirmed a suspicion that St. Surin was the target of a federal investigation. The article states Hurd

and current and former DPW officials would not discuss the investigation's focus but refers to another law enforcement source as saying it centers on allegations St. Surin had granted government contracts in exchange for favors when St. Surin was head of the DPW's engineering division.

On the day the article was published, Hurd contacted the Daily News and told it his conversation with Bakr had been inaccurately reported. He told the Daily News that he never said charges would be filed in the next week. The next day the Daily News published a front-page "correction." It reported Hurd "did not say charges will be filed next week against" St. Surin and that the government would issue a statement shortly.[1] Appellant's Appendix ("App.") at 10.

St. Surin says the Daily News was always aware Hurd never stated charges were imminent. He also says the notes Bakr took during his interview with Hurd accurately reflected Hurd's statement about St. Surin, "there will [be] some kind of action taken on that shortly." App. at 568. Additionally, Bakr's first draft of the story, which no longer exists, also quoted Hurd accurately. St. Surin claims the article was changed by Penny Feuerzeig and David Pike, two senior editors of the Daily News, to report falsely that Hurd said charges would be filed within one week.

Almost two weeks before the Daily News story was published, the St. Croix Avis, in a political gossip column entitled "Spy," under the byline "Mongoose," published this report:

> The cabinet meetin' was over so ah climb up on de roof, right on top of de *oval office* by de sun roof over de Governor desk. Man, within minutes mey ears tune in ... ah dunno whether he was talking to someone in de office or only on de phone cause ah could only hear his voice. It went something like dis ... " ... Yes *Doc*, I know he's your *boyfriend* but. ."
> ". . . Yeah but the Inspector General is recommending to the U.S. Attorney that criminal charges be filed against him . . . ."

---

[1] On July 31, 1989, the U.S. Attorney's office released a statement that it would file no charges as a result of the Investigation. This statement did not mention St. Surin or any other individual by name.

St. Surin was, however, the subject of an investigation by the Environmental Protection Agency "EPA") for improper activity on an EPA grant. The EPA's investigative team recommended to the agency that it "disbar" St. Surin from all EPA projects for three years. St. Surin has filed an administrative appeal opposing this recommendation.

"... O.K., I'll procrastinate as long as I can because the report isn't public yet but it look like his *voodoo accounting practices at Public Works* finally catch up with him . . . ." ". . . Yeah, O.K. Doc, I'll contact you before I do anything . . . if I do anything. . . ."

App. at 9 (emphasis in original). Though he was not named in the article, St. Surin asserts the link between the reference to the DPW and his well known relationship with an island doctor identified him, unfairly criticized his work at DPW and falsely stated charges were about to be filed against him.

The Daily News answered St. Surin's complaint on January 3, 1990. Avis never answered and the district court entered a default against it on April 18, 1990, but St. Surin and Avis later filed a stipulation setting aside the entry of default and all the parties began discovery on written interrogatories.

In early 1991, St. Surin filed notice of his intent to take Bakr's deposition. After several delays, Bakr was deposed on April 10, 1991. One day earlier, the Daily News had deposed St. Surin. On October 9, 1991, the Daily News filed a Federal Rule of Civil Procedure 56(c) motion for summary judgment supported by affidavits and accompanied by a fifty-six page brief. St. Surin responded with a Rule 56(f) motion requesting more time for discovery before responding to the Daily News' motion. In his Rule 56(f) motion St. Surin said: "Discovery has not been completed and that depositions especially those of James Hurd, Esq., and Penny Feuerzeig are vital to the issues that could be dispositive of defendants [sic] motion for summary judgment." App. at 34. No affidavits accompanied St. Surin's Rule 56(f) motion and the district court never ruled on it.

On October 16, 1991, St. Surin served additional interrogatories on the Daily News. On October 31, 1991, he deposed Penny Feuerzeig, the Daily News editor who allegedly altered the story. He now says during that deposition he first became aware of the substantial role David Pike, former managing editor of the Daily News, had played in his case. Pike has since moved to California. About the same time, St. Surin says the Daily News' attorney contacted him and told him she would be absent from the island for an extended period to receive medical attention. St. Surin says the parties all agreed to suspend discovery until she returned.

On February 4, 1992, Avis moved for summary judgment. St. Surin responded with another Rule 56(f) motion. Eventually, the

Pike and Hurd depositions were noticed for July 2, 1992. In the meantime, Magistrate Judge Barnard scheduled a status conference for June 24, 1992. It was postponed until Hurd's and Pike's depositions could be taken. Unfortunately, they were not taken on July 2 and have not been rescheduled. Counsel for the Daily News informed Magistrate Judge Barnard of this postponement. St. Surin contends the failure to reschedule Pike and Hurd is attributable, at least in part, to a trip to Europe by the Daily News' counsel.

On September 13, 1992, without notice to St. Surin, a visiting United States District Judge, sitting by designation, granted both the Daily News' and Avis' motions for summary judgment. At that time, St. Surin's two Rule 56(f) motions were still pending. St. Surin moved for reconsideration, outlining all the problems that had taken place in the three years of discovery. The district court denied reconsideration and St. Surin filed this timely notice of appeal.

## II.

■ When an order granting a motion for summary judgment is attacked as premature, we review a district court's refusal to delay action for an abuse of discretion, Radich v. Goode, 886 F.2d 1391, 1393 (3d Cir. 1989), but review of the substance of an order granting a summary judgment motion is plenary. Public Interest Research of N.J. v. Powell Duffryn Terminals, Inc., 913 F.2d 64, 76 (3d Cir. 1990), cert. denied, 111 S. Ct. 1018 (1991); see also Fed. R. Civ. P. 56.

## A.

Initially, the Daily News contends St. Surin's Rule 56(f) motion to delay his response to the motion for summary judgment was defective because no affidavits accompanied it. Federal Rule of Civil Procedure 56(f) gives a district court discretion to delay action on a motion for summary judgment "[s]hould it appear from the *affidavits of a party opposing the motion* that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Fed. R. Civ. P. 56(f) (emphasis added).[2] Other jurisdic-

---

[2] The rule provides in full:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions

tions do not require meticulous, technical compliance with Rule 56(f)'s requirement that a request for delay be supported by affidavits. See International Shortstop, Inc. v. Rally's Inc., 939 F.2d 1257, 1267 (5th Cir. 1991) ("Although the preferred procedure is to present an affidavit in support of the requested continuance, so long as the nonmoving party indicates to the court by 'some equivalent statement, preferably in writing' of its need for additional discovery, the nonmoving party is deemed to have invoked the rule.") (citations omitted), cert. denied, 112 S. Ct. 936 (1992). This Court has, however, underscored the benefits of technical compliance. See, e.g., Lunderstadt v. Colafella, 885 F.2d 66, 70 (3d Cir. 1989) ("[W]e call to the attention of the bar once again the [affidavit] requirement of the Rule") (emphasis in original); Dowling v. City of Philadelphia, 855 F.2d 136, 139–40 (3d Cir. 1988) (emphasizing the need for compliance); see also Radich, 886 F.2d at 1394 ("'The purpose of the affidavit is to ensure that the nonmoving party is invoking the protection of Rule 56(f) in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition.'") (quoting First Chicago Int'l v. United Exch. Co., 836 F.2d 1375 (D.C. Cir. 1988)). Although we again emphasize the desirability of full compliance with Rule 56(f), failure to support a Rule 56(f) motion by affidavit is not automatically fatal to its consideration. Cf. Sames v. Gable, 732 F.2d 49, 52 n.3 (3d Cir. 1984) (failure to file Rule 56(f) motion does not compel non-merits resolution of claim when failure to do so is not "sufficiently egregious"). While both Dowling and Lunderstadt decried failure to file a supporting affidavit, neither rested entirely on that ground. If a Rule 56(f) motion does not meet the affidavit requirement, it must still "identify with specificity 'what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.'" Lunderstadt, 885 F.2d at 71 (quoting Dowling, 855 F.2d at 140). Essentially, a party moving for postponement under Rule 56(f) must inform the district court why delay is needed before the motion can be properly considered.

■ St. Surin's Rule 56(f) motion provides these details. It identifies two specific depositions that had not yet been taken, those of Hurd and Feuerzeig. It states that Feuerzeig's deposition was not

---

to be taken or discovery to be had or may make such other order as is just. Fed. R Civ. P. 56 (f).

yet taken "due to the unavailability of said witness." App. at 34. Although St. Surin gave no reason for the delay in deposing Hurd and, in fact, as of the date of the grant of summary judgment, had still not deposed him, we do not think this precluded consideration of his Rule 56(f) motion.

## B.

District courts usually grant properly filed Rule 56(f) motions "as a matter of course." Sames, 732 F.2d at 51 (quoting Costlow v. United States, 552 F.2d 560, 564 (3d Cir. 1977)). St. Surin argues the district court abused its discretion when it considered the merits of the Daily News' summary judgment motion while his Rule 56(f) motion for a continuance was pending. He relies on Micro-Sparc, Inc. v. Weinstock, 758 F.2d 790, 793 (1st Cir. 1985). There the court stated the plaintiff's "better argument" was that a court should not act on a summary judgment motion when a motion for a continuance is pending. Id. at 793. While the court of appeals ultimately affirmed the district court's order in Micro-Sparc granting summary judgment, it noted equities against the grant of summary judgment when the respondent has discovered significant additional evidence while the motion was pending. See id. (dicta).

In Dowling we held the district court did not abuse its discretion when it granted summary judgment to defendants while plaintiff was still seeking additional discovery and a defendant's request for a protective order against some of that discovery was still outstanding. Dowling, 855 F.2d at 139–41. We reached our decision in part because the evidence plaintiff sought "would not have precluded summary judgment." Id. at 140. We also identified a number of means the plaintiff could have used to discover this evidence. Id. The instant case differs because St. Surin had no other method of securing the evidence. This proposed discovery seems likely to produce evidence that would have materially affected the merits of the Daily News' pending motion for summary judgment.

In Sames we held the district court erred in deciding a summary judgment motion for a defendant who had not yet answered plaintiffs' interrogatories. We relied in part on the fact that the information the party opposing summary judgment sought was in the possession of the moving party. Sames, 732 F.2d at 51–52. Though the two parties St. Surin wishes to depose, Assistant U.S. Attorney Hurd and former editor David Pike, are not under the control of

the Daily News, part of the delay in scheduling their depositions does appear to have resulted from St. Surin's accommodation of the Daily News and its counsel.[3]

Normally, the eleven months that passed since the Daily News filed its motion for summary judgment would be enough time to complete discovery, but here two delays the Daily News' counsel requested seem to have taken up significant portions of that time. We do not think St. Surin should suffer from a failure of proof caused by his accommodation of the Daily News' requests for delay.

 We also think a district court should be wary before granting summary judgment without conducting a hearing. See Sames, 732 F.2d at 52; see also Season-All Indus., Inc. v. Turkiye Sise Ve Cam Fabrikalari, A.S., 425 F.2d 34, 39–40 (3d Cir. 1970). A hearing would have given the district court an opportunity to evaluate St. Surin's reasons for delay. In addition, St. Surin may have thought consideration of the merits of the motion had been deferred while further discovery was underway and his Rule 56(f) motion had yet to be decided. Under these circumstances, we think the district court should have resolved St. Surin's Rule 56(f) motions before proceeding to the merits of the newspaper's summary judgment motion and then, if it decided to deny the request for delay, give St. Surin reasonable notice and an opportunity to respond on the merits to the motion for summary judgment. Its ruling on the merits, in disregard of the Rule 56(f) motion, was improper. The district court gave St. Surin no chance to file a response or to dispute or argue the legal effect of the facts the newspapers averred in support of their motions to dismiss. On these facts, we hold the district court abused its discretion when it granted summary judgment without giving St. Surin notice and an opportunity to file a response. Therefore, we will remand to the district court for further proceedings.[4]

---

[3] We do not suggest that either the Daily News or its counsel has tried to frustrate discovery or delay answers, as in Sames, but the record does show that it asked St. Surin on several occasions to agree to postpone depositions for the convenience of defense counsel. The record indicates counsel for the Daily News sought postponement of discovery events in order to seek medical treatment off Island and to take a business trip to Europe.

[4] Avis has not filed any briefs or otherwise participated in this appeal. St. Surin

## III.

As an alternate basis for remand, we hold the district court erred in granting summary judgment on the merits. Initially, it stated:

> It is clear, beyond legitimate dispute that the challenged articles do no more than report, in advance and in retrospect, investigations of plaintiff's official conduct which did occur, and that the accounts were true and accurate in all material respects.

App. at 7. After receiving additional materials in St. Surin's motion for reconsideration, the district court in denying the motion for reconsideration stated:

> Viewing these materials in a light most favorable to the plaintiff, they might support an inference that one or more of the defendants was pleased to be able to report that plaintiff was under investigation. But there is nothing in these materials which casts doubt upon the correctness of the grant of summary judgment for the defendants: plaintiff is a public figure, his office was being investigated, and the accounts were essentially correct.

Id. at 4. St. Surin challenges these conclusions.

## A.

■ The Restatement (Second) of Torts[5] § 581A states:

> One who publishes a defamatory statement of fact is not subject to liability for defamation if the statement is true.

Restatement (Second) of Torts § 581A (1977); see also Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 775 (1986). The truth required is not complete truth but rather substantial truth. Minor in-

---

himself has not briefed the issues as they relate to Avis' article. Avis has also failed to respond to this Court's September 16, 1993, letter inquiring about its intention with regard to participating in this appeal. Because the district court acted prematurely in granting summary judgment to Avis as well as the Daily News, we will vacate that portion of its order and remand the claim against it for further proceedings consistent with this opinion but without prejudice to St. Surin's right to renew his motion for a default judgment against it.

[5] Where a statute does not specifically control a cause of action, the Virgin Islands adopts the statement of the law as set forth in the current American Law Institute restatements of the law. V.I. Code Ann. tit. 1, § 4 (1967); Miller v. Christian, 958 F.2d 1234, 1237 (3d Cir. 1992).

accuracies regarding factual information will not make an article untrue and libelous so long as the statement would not materially mislead the reader. See Orr v. Argus-Press Co., 586 F.2d 1108, 1112 (6th Cir. 1978), cert. denied, 440 U.S. 960 (1979); Auvil v. CBS "60 Minutes", 800 F. Supp. 928, 936 (E.D. Wash. 1992); see also Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 513 (1984) ("[E]rroneous statement is inevitable in free debate, and . . . must be protected if the freedoms of expression are to have the 'breathing space' that they 'need . . . to survive.' ") (quoting New York Times v. Sullivan, 376 U.S. 254, 271–72 (1964)).

■ In a libel trial, the burden rests with the public-figure plaintiff[6] to prove falsity. Hepps, 475 U.S. at 775; Schiavone Constr. Co. v. Time, Inc., 847 F.2d 1069, 1083 (3d Cir. 1988). In Schiavone, we held "the truth must be as broad as the defamatory imputation or 'sting' of the statement." Schiavone, 847 F.2d at 1084 (quotation omitted). Therefore, it is necessary to determine the sting of the offending article before we can assess its truth. Id. We start with the headline over the Daily News article: "Charges near against DPW official—prosecutor." App. at 11. It states a "prosecutor" has announced charges will soon be filed against St. Surin. The body of the article reinforces the statement. It says: "A federal prosecutor says charges are expected to be filed next week against a Public Works Department official." Id.

It is undisputed that the Environmental Protection Agency was engaged in an investigation of St. Surin at the time the article was published and that Hurd was aware of the investigation. In the affidavit he submitted with the Daily News' motion for summary judgment, Hurd stated he had told Bakr "an investigation was ongoing" at the time of the article. Id. at 367. In that respect, the article is true. It also appears St. Surin was the subject of an investigation concerning improprieties in performance of his public office with DPW. The article is also truthful in that respect.

Nevertheless, given the headline's reference to a "prosecutor" and the body's reference to the U.S. Attorney's office, the next sentence clearly implies to the ordinary reader that these charges will

---

6 The parties do not contest that St. Surin, as a former highly placed official at DPW, is at least a limited purpose public figure. See Schiavone Constr. Co. v. Time, Inc., 847 F.2d 1069, 1077 (3d Cir. 1988); McDowell v. Paiewonsky, 769 F.2d 942, 949–50 (3d Cir. 1985).

be criminal. It states: "Assistant U.S. Attorney James Hurd Jr. confirmed that the target of the allegations is Gabriel St. Surin, coordinator for special projects." Id. at 11. Later in the article, readers learn that the substance of the investigation, and presumably the charges, is the allegation that St. Surin "granted contracts and sought favors in return." Id.

The most troubling aspects of the article are its statement that federal charges are "expected to be filed next week," and the headline implying that they would be criminal in nature. Id. In his affidavit, Hurd swore he told Bakr he "could neither confirm or deny rumors concerning the investigation or its target but that some action concerning the whole affair would occur the following week." Id. at 367. Hurd's affidavit expressly says he never indicated the action would be the filing of charges. St. Surin was never charged with a federal crime, though the EPA later proposed administrative sanctions against him. Nothing in the record shows any federal prosecutor anticipated charges, criminal or administrative, were imminent; and Hurd's quick request for a retraction strongly indicates the article did not accurately reflect either what Hurd said or the intentions of the United States Attorney's office.

The Daily News says its report was substantially truthful because the EPA later proposed to "disbar" St. Surin. Schiavone answers this argument. Applying it to this record we conclude the article's "sting" includes its statements that (1) the federal prosecutor's investigation targets St. Surin, (2) the government will charge that St. Surin traded favors for contracts, and (3) the imminent filing of criminal charges.

The fact that a governmental entity was considering administrative sanctions when the Daily News published the article is not equivalent to the article's "sting." Public knowledge that one is the subject of an administrative investigation does not harm one's reputation as much as public knowledge that one is about to be charged with a crime. The "sting" of the article is the intention of the United States Attorney to file criminal charges against St. Surin within a week. The article does not mention any potential EPA sanctions but focuses instead on statements about "charges" falsely attributed to Hurd in his capacity as "prosecutor."

■ The Daily News' argument that the word "charges" could include any sanction from the government does not remove the sting of the article. Words take on meaning in the company of other

words. They are gregarious. They take on tone and color from syntax and context. In defamation actions, words should be construed as they would be understood by the average reader. Afro-American Publishing Co. v. Jaffe, 366 F.2d 649, 655 (D.C. Cir. 1966) (in banc). So construed, we think the Daily News' article falsely implies that a federal prosecutor said the government will soon bring criminal charges against St. Surin. The record, as it now exists, is sufficient to survive summary judgment on the issue of falsity.[7]

## B.

Because St. Surin is a public figure, it is not enough for him to show there is an issue of fact on falsity. He must show the Daily News knew the story was false, or at least that it acted in reckless disregard of its truth or falsity. When a public figure sues for defamation because of statements about his public activities he must demonstrate the publisher of the material acted with "actual malice" defined as "knowledge that [the statement] was false or with reckless disregard of whether it was false or not." New York Times Co. v. Sullivan, 376 U.S. 254, 279–80 (1964). Accordingly, the Daily News may still succeed at the summary judgment stage by demonstrating St. Surin has not pointed to admissible evidence that could support a finding of "actual malice."

The New York Times exacting standard for malice is met when the author or publisher "in fact entertained serious doubts as to the truth of his publication," St. Amant v. Thompson, 390 U.S. 727, 731 (1968), or proceeded on in the face of a "high degree of awareness of . . . probable falsity." Garrison v. Louisiana, 379 U.S. 64, 74 (1964). One court has observed: "Although the Constitution neither condones nor encourages careless journalistic practices, the journalist who merely is careless may not be held liable for defaming a public

---

[7] On remand, St. Surin must also prevail on the issue of defamatory meaning. Defamatory meaning is ultimately a question for the court to decide, but where the article can be interpreted in both a defamatory and nondefamatory manner, the jury, on proper Instruction, must decide what the statement means. Schiavone, 847 F.2d at 1083. We note that other courts have held a false statement that a plaintiff "may be" charged with criminal conduct in libel per se. See Lawrence v. Bauer Publishing & Printing Ltd., 446 A.2d 469, 473 (N.J.), cert. denied, 459 U.S. 999 (1982) (noted with approval in Schiavone, 847 F.2d at 1083). On the present record, we are not prepared to hold that the article has a defamatory meaning. Our present task is to rule on the grant of summary judgment for the defendants.

figure." Long v. Arcell, 618 F.2d 1145, 1148 (5th Cir. 1980), cert. denied, 449 U.S. 1083 (1981). Another has stated "neither negligence nor failure to investigate, on the one hand, nor ill will, bias, spite, nor prejudice, on the other, standing alone, [are] sufficient to establish either a knowledge of the falsity of, or a reckless disregard of, the truth or falsity of the materials used." Goldwater v. Ginzburg, 414 F.2d 324, 342 (2d Cir. 1969), cert. denied, 396 U.S. 1049 (1970); see also Masson v. New Yorker Magazine, Inc., 111 S. Ct 2419, 2429–30 (1991) ("actual malice" in a defamation case and malice as "an evil intent or a motive arising from spite or ill will" are separate and unrelated concepts).

■ In a defamation case, the plaintiff must show actual malice by clear and convincing evidence. Bose Corp., 466 U.S. at 511 n.30; Restatement (Second) of Torts § 580A cmt. f (1977). Summary judgment for the publisher is quite often appropriate because of the difficulty a public official has in showing "actual malice."

St. Surin nevertheless insists the facts in this record support a finding of actual malice. Considering them in the light most favorable to St. Surin, as we must on summary judgment, they show the following.

Reporter Bakr interviewed Hurd about potential criminal charges from an investigation of improprieties at DPW. Hurd implicitly confirmed an investigation of St. Surin but refused to state charges would be filed. Bakr accurately quoted Hurd in his notes of the conversation. Bakr prepared an initial draft of the article that also accurately quoted Hurd. Daily News editor Feuerzeig edited the article and changed it to read that the government expected to file charges against St. Surin the following week. This change is material because it changes and intensifies the false "sting."

None of the Daily News' affiants can identify any source for Feuerzeig's change in the article's substance. Bakr said in his deposition the decision to change the story was Feuerzeig's, but the changes did not concern him. In her deposition, Feuerzeig testified she had separate sources which indicated the investigation was going to result in charges, but she also stated her edits to Bakr's story were based solely on Bakr's research.

Whether all this shows actual malice depends on what Feuerzeig knew when she rewrote the article. Viewed again in the light most favorable to St. Surin, the record shows Feuerzeig was aware of facts showing her changes to the article made it false. She knew

about Bakr's report. She changed it to state charges would be brought. She also changed it, in direct contradiction to Bakr's report, to state Hurd was the source of this information. Hurd denies he was the source.

Unfortunately, the initial draft of the story no longer exists. It was erased during the editing process. All that remains are Bakr's recollections and his notes of his conversation with Hurd. The notes indicate he accurately quoted Hurd as saying "there will [be] some kind of action taken on that shortly." App. at 568. Nowhere do the notes indicate Hurd believed charges would be filed within the week.

The Daily News argues it was negligent not reckless but points to no evidence that could indicate any source for the mistake about what Hurd said. Feuerzeig may have told Bakr the information came from an additional source, but the only source this record shows is Bakr, and his testimony flatly contradicts the article's version of what Hurd said. While it might have been merely negligent to misattribute the quote, a fabrication of what Hurd said is enough to show a "high degree of awareness of . . . probable falsity," Garrison, 379 U.S. at 74, or a reckless disregard for the truth.

The First Amendment provides a "breathing space" for discourse about public officials on matters of public concern. New York Times, 376 U.S. at 272. It does not give the press a license to fabricate damaging allegations and falsely attribute them to official sources. New York Times rejected a rule of defamation under which "would-be critics of official conduct may be deterred from voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of the expense of having to do so." Id. at 279. These values are not threatened by an action in which there is substantial evidence that the sting of the report is unsupported. See Schiavone, 847 F.2d at 1084.

■ The district court erred in granting summary judgment on the ground that this record negates "actual malice."

## IV.

The Daily News has not made out a case for summary judgment. The article in question falsely attributed a quote to a federal prosecutor. It left the unmistakable impression St. Surin was about to be

387

the subject of criminal charges. In fact, the government was only reviewing the situation, was not prepared to issue charges and ultimately proposed only administrative sanctions. The only source the present record shows for misrepresentation of the government's position is the editor, and neither she nor the reporter have identified any basis for the change she made in the article asserting the prosecutor planned to bring charges imminently. A genuine dispute of material fact exists as to whether the Daily News published its story about St. Surin with a reckless disregard for the truth of the assertion. We also conclude the district court abused its discretion when it granted the Daily News' motion for summary judgment without notice to St. Surin while significant discovery was yet to be had and St. Surin's Rule 56(f) motion was still undecided. Accordingly, we will reverse the order of the district court granting summary judgment for the defendants and remand for further proceedings consistent with this opinion.