**CHURCH OF SCIENTOLOGY INTERNATIONAL,**
Plaintiff,

v.

**TIME WARNER, INC., Time Inc. Magazine Company, and Richard Behar, Defendants.**

**No. 92 Civ. 3024 (PKL).**

United States District Court, S.D. New York.

Nov. 14, 1995.

Morrison Cohen Singer & Weinstein, LLP, New York City (Jonathan W. Lubell, Jonathan M. Plissner, of counsel), for Plaintiff.

Cahill Gordon & Reindel, New York City (Floyd Abrams, Dean Ringel, of counsel), for Defendants.

LEISURE, District Judge:

Plaintiff Church of Scientology International ("CSI") brought this action to recover for damages allegedly suffered from the publication of false and defamatory statements concerning CSI in the cover story of the May 6, 1991 issue of *Time* magazine. Defendants Time Warner, Inc., Time Inc. Magazine Company, and Richard Behar (collectively "Time") move this Court for summary judgment, pursuant to Federal Rule of Civil Procedure 56, on the grounds that they lacked

actual malice in publishing the article about CSI, an admitted public figure. *See* Plaintiff's Response to Defendants' First Set of Requests for Admission to Plaintiff. For the reasons stated below, defendants' motion is granted in part and denied in part.

## DISCUSSION

 "Summary judgment is proper only if, viewing all evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact" as to an essential element of a claim. *Buttry v. General Signal Corp.,* 68 F.3d 1488, 1492 (2d Cir. 1995). A public figure suing for libel must prove, as one of the essential elements of the claim, that the defendant published the material with actual malice, i.e., actual knowledge of its falsity or with serious subjective doubts as to its truth. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964); *St. Amant v. Thompson,* 390 U.S. 727, 731–32, 88 S.Ct. 1323, 1325–26, 20 L.Ed.2d 262 (1968). The First Amendment further requires that the plaintiff prove actual malice with clear and convincing evidence. *See id.* Therefore, "there is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

 Although a defendant's state of mind is at issue in a libel case covered by *New York Times,* that fact alone cannot preclude summary judgment, for First Amendment protection cannot be emasculated by unwillingness on the part of a court to grant summary judgment where "affirmative evidence of the defendant's state of mind" is lacking. A libel suit cannot be allowed to get to the

jury, at enormous expense to the defendant, based on mere assertions of malice by the plaintiff. *Cf. St. Surin v. Virgin Islands Daily News, Inc.,* 21 F.3d 1309, 1318 (3d Cir.1994) ("Summary judgment for the publisher is quite often appropriate because of the difficulty a public official has in showing 'actual malice.'"). Indeed, without judicious use of summary judgment to dispose of libel suits, "the threat of being put to the defense of a lawsuit ... may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself." *Immuno AG. v. Moor–Jankowski,* 74 N.Y.2d 548, 561, 549 N.E.2d 129, 135, 549 N.Y.S.2d 938, 944 (1989) (internal quotation marks omitted), *vacated,* 497 U.S. 1021, 110 S.Ct. 3266, 111 L.Ed.2d 776 (1990), *adhered to,* 77 N.Y.2d 235, 567 N.E.2d 1270, 566 N.Y.S.2d 906 (1991), *cert. denied,* 500 U.S. 954, 111 S.Ct. 2261, 114 L.Ed.2d 713 (1991). Because the freedoms guaranteed by the First Amendment are designed to ensure that debate, not litigation, is vigorous, the subjective nature of the test of liability cannot create a bar to summary disposition of libel suits.[1] *See McLee v. Chrysler Corp.,* 38 F.3d 67, 68 (2d Cir.1994) (ruling that district court's view—that summary judgment was unavailable in discrimination cases where employer's intent was at issue—was unsupportable). Indeed, this Court finds little to distinguish silence enforced by oppressive litigation from "silence coerced by law—the argument of force in its worst form." *Whitney v. California,* 274 U.S. 357, 375–76, 47 S.Ct. 641, 648–49, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring).

 In addition, the Court must "consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhi-

---

1. In this respect, the Court notes that both debate and litigation have been vigorous in the case at bar. CSI published an 80–page rebuttal to the *Time* article, which it distributed to church members, business leaders, and political figures. *See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Def.'s Memo.") at 3. In addition, CSI published a series of full-page advertisements in *USA Today* challenging the article and Time's accuracy and biases in publishing it. *See id.;* Affidavit of Lynn R. Farny ("Farny Aff.") ¶ 16, Exs. 14, 15. The discovery in this case has been extensive, even though discovery has not yet been directed to the issue of truth or falsity. For example, Richard Behar, the author of the article, was deposed for 16½ days over a 12 month period. *See* Def.'s Memo. at 4. The submissions to the Court in support of or in opposition to this motion consist of thousands of pages of memoranda, affidavits, and exhibits.

bited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks." *New York Times Co.*, 376 U.S. at 270, 84 S.Ct. at 720. As quoted in *New York Times,*

"In the realm of religious faith, and in that of political belief, sharp differences arise. In both fields the tenets of one man may seem the rankest error to his neighbor. To persuade others to his own point of view, the pleader, as we know, at times, resorts to exaggeration, to vilification of men who have been, or are, prominent in church or state, and even to false statement. But the people of this nation have ordained in the light of history, that, in spite of the probability of excesses and abuses, these liberties are, in the long view, essential to enlightened opinion and right conduct on the part of the citizens of a democracy."

*Id.* at 271, 84 S.Ct. at 721 (quoting *Cantwell v. Connecticut*, 310 U.S. 296, 310, 60 S.Ct. 900, 906, 84 L.Ed. 1213 (1940)). Because sharp disagreement is essential to robust debate about important issues, "[a]ctual malice under the *New York Times* standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510, 111 S.Ct. 2419, 2429, 115 L.Ed.2d 447 (1991). The speaker's belief in his statements, even his exaggerations, enhances, rather than diminishes, the likelihood that they are protected from libel attack by the First Amendment. Only where the speaker himself lacks this conviction, where the speaker entertains serious doubt as to the veracity of his statements, is the false statement actionable. *See St. Amant*, 390 U.S. at 731, 88 S.Ct. at 1325.

■ As a threshold matter, then, the Court considers plaintiff's assertions that Behar, after publishing an article in *Forbes* critical of the church,

targeted the Church with a fixed view of it as a 'destructive cult.' In the next five years, through the publication of his article in the May 6, 1991 issue of *Time,* Behar refined his focus—gathering negative information from Scientology adversaries and proposing anti-Church articles—while

never changing any view about the Church, never accepting anything a Scientologist said and uniformly ignoring anything positive he learned about the Church.

Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment at 2. As noted, malice in the sense of hatred or ill-will is often indicative of lack of the actual malice required under *New York Times,* and therefore would tend to undermine, not support, plaintiff's case. In addition, "reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant*, 390 U.S. at 731, 88 S.Ct. at 1325. However, the combination of inadequate investigation with bias on the part of the publisher can give rise to an inference of actual malice. *See Harte–Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 682, 109 S.Ct. 2678, 2693, 105 L.Ed.2d 562 (1989). With a showing of an extreme departure from standard investigative techniques, bias of the reporter becomes relevant to explain this extreme departure as more than mere carelessness—rather as purposeful avoidance of the truth. Plaintiff therefore devotes much of its opposition to the motion to attempting to demonstrate Behar's predetermined bias toward the church. However, plaintiff has failed to demonstrate the correlative circumstance of inadequate investigation to make its evidence of bias probative of actual malice, rather than probative of lack thereof. Without a showing of inadequate investigation, bias merely confirms the publisher's firmly-held belief in the allegedly defamatory statements.

■ With these principles in mind, the Court considers each allegedly libelous statement individually to determine whether a rational finder of fact could find actual malice by clear and convincing evidence. *See Tavoularas v. Piro*, 817 F.2d 762, 794 (D.C.Cir.) (*en banc*) ("[D]efamation plaintiffs cannot show actual malice in the abstract; they must demonstrate actual malice *in conjunction* with a false defamatory statement." (emphasis in original)), *cert. denied,* 484 U.S. 870, 108 S.Ct. 200, 98 L.Ed.2d 151 (1987).

## A. *Statements Set Forth at ¶ 40*

Paragraph 40 of the complaint sets forth several statements alleged to be false and defamatory. (The text of the sentences as they appear in the article is set forth below; the portions quoted in the complaint are underlined.)

1. "In reality *the church* is a hugely profitable global racket that *survives by intimidating members and critics in a Mafialike manner.*"

2. "Says Cynthia Kisser, the [Cult Awareness] network's Chicago-based executive director: '*Scientology is quite likely the most ruthless, the most classically terroristic,* the most litigious and the most lucrative *cult the country has ever seen.* No cult extracts more money from its members.' "

3. "*Those who criticize the church—journalists, doctors, lawyers and even judges—often find themselves* engulfed in litigation, stalked by private eyes, *framed for fictional crimes, beaten up or threatened with death.*"

### 1. *Mafia–Like Intimidation*

 Time relied on many sources as the basis for its belief that "the church ... survives by intimidating members and critics in a Mafia-like manner." None of these sources is so obviously incredible that a reasonable jury could infer from Time's reliance on them knowledge of falsity or subjective doubt as to veracity. *See St. Amant,* 390 U.S. at 732, 88 S.Ct. at 1326; *cf. id.* ("Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call."). *Compare Harte–Hanks,* 491 U.S. at 691, 109 S.Ct. at 2697 ("The hesitant, inaudible, and sometimes unresponsive and improbable tone of Thompson's answers to various leading questions raise obvious doubts about her veracity."). On the contrary, Behar relied on affidavits from former high-ranking Scientologists, newspaper and periodical articles, interviews and personal experience, and published court opinions, often issued after the benefit of adversarial presentation of testimony, which supported his professed belief that CSI intimidated critics and members. *See* Affidavit of Richard Behar ("Behar Aff.") ¶¶ 28–61. The Court finds that based on this evidence, no reasonable jury could find that CSI had proven by clear and convincing evidence that Time either knew or entertained serious doubts that the statement was false.

### 2. *Most Ruthless, Classically Terroristic Cult*

 This statement appeared in the article in the form of a quotation from Cynthia Kisser, executive director of the Cult Awareness Network. "Repetition of another's words does not release one of responsibility if the repeater knows that the words are false or inherently improbable, or there are obvious reasons to doubt the veracity of the person quoted or the accuracy of his reports." *Goldwater v. Ginzburg,* 414 F.2d 324, 337 (2d Cir.1969), *cert. denied,* 396 U.S. 1049, 90 S.Ct. 701, 24 L.Ed.2d 695 (1970). Based on the material supporting Behar's statement regarding Mafia-like intimidation, *see* Behar Aff. ¶¶ 28–61; *see also id.* ¶¶ 62–67, Behar's repetition of Kisser's statement was not done with knowledge that the statement was false or inherently improbable. Nor are there obvious reasons to doubt Kisser's veracity. There is no doubt that her views are deeply opposed to CSI's views, and each likely regards the other's conduct as reprehensible if not criminal, *see* Farny Aff. ¶ 98, but such sharp disagreement and Kisser's obvious antagonistic relationship with Scientology does not amount to an obvious reason to doubt her veracity. On the contrary, as executive director of an organization dedicated to studying so-called cults, her judgment as to CSI's ruthlessness and terroristic practices likely carried credence with Behar. *See id.* ¶ 62. The Court therefore finds that a reasonable jury could not find that plaintiff had demonstrated actual malice on the part of Time in publishing this statement by clear and convincing evidence.

### 3. *Journalists, Doctors, Lawyers, and Judges Framed, Beaten Up, or Threatened with Death*

 In light of Behar's beliefs regarding his own experiences with Scientology, the

admitted harassment of Paulette Cooper by Scientology's Guardian's Office (which has been disbanded), and the other sources relied on by Behar, *see* Behar Aff. ¶¶ 85–93, the Court finds no evidence that Behar made the statement regarding journalists with actual malice. Similarly, there are not "obvious reasons to doubt" Behar's sources for his statement regarding doctors, lawyers, and judges. *See St. Amant,* 390 U.S. at 732, 88 S.Ct. at 1326. Although Behar does not have convincing evidence to link CSI with many of the strange incidents befalling these groups of people in conflict with Scientology, that fact alone does not allow a reasonable jury to conclude that Behar entertained doubts as to the veracity of his statement that these incidents are linked to CSI. *Compare id.* at 732, 88 S.Ct. at 1326 (good faith unlikely where story is fabricated by defendant, based on his imagination, or based on unverified anonymous telephone call). Therefore, the Court finds that no reasonable jury could find by clear and convincing evidence that Time published the above statement with actual malice.

## B. *Statements Set Forth at ¶ 58*

CSI challenges the following as false and defamatory:

"THE LOTTICKS LOST THEIR SON, Noah, who jumped from a Manhattan hotel clutching $171, virtually the only money he had not yet turned over to Scientology. His parents blame the church and would like to sue but are frightened by the organization's reputation for ruthlessness.

"His death inspired his father Edward, a physician, to start his own investigation of the church. 'We thought Scientology was something like Dale Carnegie,' Lottick says. 'I now believe it's a school for psychopaths. Their so-called therapies are manipulations. They take the best and brightest people and destroy them.'

"It was too late. 'From Noah's friends at Dianetics' read the card that accompanied a bouquet of flowers at Lottick's fu-

neral. Yet no Scientology staff members bothered to show up."

■ The primary sources relied on by Behar for these statements are the parents of Noah Lottick. The Lotticks affirmed the accuracy of each statement in the article. *See* Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment ("Def.'s Reply") at 12. Furthermore, the Lotticks are not obviously lacking in credibility, and the statements are not inherently improbable. Nevertheless, Behar made a thorough investigation of this aspect of his article by discussing it with various persons who knew Noah. Although Behar can be criticized for not interviewing Fred Lemons, an active Scientologist, asserted Scientology staff member, and former roommate of Noah Lottick, this omission is not such that it might raise an inference of purposeful avoidance of the truth. *Cf. Harte–Hanks,* 491 U.S. at 682, 109 S.Ct. at 2693 ("[W]hile denials coming from Connaughton's supporters might be explained as motivated by a desire to assist Connaughton, a denial coming from [the uninterviewed] Stephens would quickly put an end to the story."). Any information to be gleaned from Lemons might be expected to be similar to, though less authoritative than, information that might be obtained from the director of the Scientology Dianetics Center, whom Behar twice attempted to contact. *See* Behar Aff. ¶ 106. In short, besides minor omissions in investigation, from which no inference of purposeful avoidance of the truth could reasonably be drawn, (even combined with Behar's alleged bias, *see supra*) CSI has not produced evidence such that a reasonable jury could find by clear and convincing evidence that Behar published the statements with actual malice. On the contrary, as reflected in Behar's notes from one of his conversations with the Lotticks, it appears that Noah had spent the money to which he had access, that Dr. Lottick had concluded that Scientology therapies were manipulations, and that no Scientology staff members attended the funeral.[2] *See* Affidavit of Jonathan W. Lubell, Esq., at Ex. 41. Therefore, the Court

---

**2.** Although CSI asserts that Fred Lemons is a staff member, there is no evidence that Behar knew this fact. In addition, if Behar were trying to avoid this fact, he would not have contacted the Scientology center.

**644**

finds that no reasonable jury could find by clear and convincing evidence that Time published the above statement with actual malice.

### C. *Statements Set Forth at ¶ 45*

Of the statements set forth at paragraph 45 of the complaint, pursuant to this Court's ruling of November 23, 1992, only the following remains at issue:

"Scientology denies any tie to the Fishman Scam, a claim strongly disputed by both Fishman and his longtime psychiatrist, Uwe Geertz, a prominent Florida hypnotist. Both men claim that when arrested, Fishman was ordered by the church to kill Geertz and then do an 'EOC,' or end of cycle, which is church jargon for suicide."

 Behar relied on Steven Fishman, Uwe Geertz, Fishman's psychologist, Marc Nurik, Fishman's former counsel, Vicki Aznaran, a former Scientologist, and Robert Dondero, the assistant United States Attorney who prosecuted Fishman for stock fraud. Although Fishman in many respects is not highly credible, based on the corroboration of aspects of his claims by other sources, this Court finds that his claims are not obviously incredible. *Cf. St. Amant,* 390 U.S. at 732, 88 S.Ct. at 1326 (good faith unlikely where unverified reliance on obviously incredible source). Specifically, Behar relied on Geertz's evaluation of Fishman's claims, Vicki Aznaran's corroboration of Fishman and Geertz's claims regarding the length of Fishman's involvement with the church, the depth of knowledge of Scientology that Fishman demonstrated, and the corroboration of certain claims by Robert Dondero. The fact that Dondero did not believe Fishman's claims does not undermine Behar's belief because Dondero was at the time prosecuting Fishman, and that prosecution would be undermined by accepting Fishman's account of Scientology's involvement with Fishman. *Cf. Harte–Hanks,* 491 U.S. at 682, 109 S.Ct. at 2693 (denials coming from interested witnesses would not cause reporter to question veracity of allegations). Therefore, the Court finds that no reasonable jury could find by clear and convincing evidence that

Time published the above statement with actual malice.

### D. *Statements Set Forth in ¶ 52*

 Of the statements set forth at paragraph 52 of the complaint, pursuant to this Court's ruling of November 23, 1992, only the following remains at issue:

"One source of funds for the Los Angeles-based church is the notorious, self-regulated stock exchange in Vancouver, British Columbia, often called the scam capital of the world."

The Court finds that a reasonable jury could find by clear and convincing evidence that Time published the above statement with actual malice.

### CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is HEREBY DENIED as to the statement set forth at paragraph 52 of the complaint, and HEREBY GRANTED as to all other statements.

**SO ORDERED.**