**THE HONORABLE LEON A. KENDALL, Appellant/Plaintiff**

**v.**

**THE DAILY NEWS PUBLISHING CO., d/b/a THE VIRGIN ISLANDS
DAILY NEWS, JOY BLACKBURN, and JOSEPH TSIDULKO,**
**Appellees/Defendants**

S. Ct. Civ. No. 2010-0046

Supreme Court of the Virgin Islands

September 21, 2011

783

GORDON RHEA, ESQ., Richardson, Patrick, Westbrook & Brickman, Mount Pleasant, SC; HOWARD M. COOPER, ESQ., JULIE E. GREEN, ESQ., Todd & Weld LLP, Boston, MA, *Attorneys for Appellant.*

KEVIN A. RAMES, ESQ., Law Offices of K. A. Rames, P.C., St. Croix, USVI; MICHAEL D. SULLIVAN, ESQ., MICHAEL BERRY, ESQ., Levine Sullivan Koch & Schulz, LLP, Washington, DC, *Attorneys for Appellees.*

HODGE, *Chief Justice*; SWAN, *Associate Justice*; and CHRISTIAN, *Designated Justice.*[1]

## OPINION OF THE COURT

(September 21, 2011)

HODGE, C.J. Based on several articles published in the Daily News involving his decisions as a Superior Court judge, the Honorable Leon A. Kendall filed claims for libel against the newspaper and the authors of the articles. A jury returned a verdict finding for Judge Kendall on his defamation claims against both the Daily News and one of its writers, Joy

---

[1] Associate Justice Maria M. Cabret has been recused from this matter. The Honorable Adam G. Christian sits in her place by designation pursuant to title 4, section 24(a) of the Virgin Islands Code.

Blackburn. After the jury returned its verdict, however, the Superior Court granted the Daily News and Blackburn's motion for a directed verdict pursuant to Federal Rule of Civil Procedure 50(b) and entered judgment for these defendants. Because Judge Kendall has failed to clearly and convincingly establish actual malice with regards to any of the contested articles, we affirm the Superior Court's judgment.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

This case arises from the publication of several newspaper articles in the Virgin Islands Daily News between April 2004 and February 2009. Based on the content of these articles, Judge Kendall filed claims for defamation against the Daily News and two of its writers, Joy Blackburn and Joseph Tsidulko. In his April 28, 2009 amended complaint, Judge Kendall sets forth nine counts for defamation. Five counts arise from articles in the Daily News involving Judge Kendall's bail decisions with regards to Chris Carty (Counts I and VII), Daniel Castillo (Counts II and VI), and Ashley Williams (Count V). The remaining four counts involve an editorial calling for Judge Kendall's resignation (Count III), an article reporting on his decision to retire (Count VIII), a claim that nine other articles are defamatory (Count IV), and that the Daily News republished its defamatory articles against Judge Kendall, erroneously claiming that judicial misconduct complaints were pending against him (Count IX). On May 12, 2009, the Appellees filed a motion to dismiss, which was denied by the Superior Court in a December 10, 2009 order. Then, on December 18, 2009, Appellees filed a motion for summary judgment, which was also denied by the Superior Court on February 22, 2010.

A jury trial commenced on March 2, 2010. After Judge Kendall presented his case and rested, Appellees orally moved for a directed verdict pursuant to Federal Rule of Civil Procedure 50(a).[2] The trial court orally denied the motion, and Appellees presented their case. Appellees subsequently renewed their motion for a directed verdict pursuant to Federal Rule of Civil Procedure 50(b) at the close of all the evidence on March 10, 2010. The trial court reserved ruling on the motion and

---

[2] Federal Rule of Civil Procedure 50 is made applicable to the Superior Court through Superior Court Rule 7.

submitted the matter to the jury. On March 16, 2010, the jury returned a verdict finding for Judge Kendall on his defamation claims against both the Daily News and Blackburn, awarding him $240,000 in damages.[3] But on May 27, 2010, the Superior Court issued a thirty-three page Memorandum Opinion and Judgment granting Appellees' motion for a directed verdict and entered judgment for Appellees and against Judge Kendall. Specifically, the Superior Court held that after considering all of the evidence in the light most favorable to Judge Kendall, including all reasonable inferences, there was insufficient evidence upon which a reasonable trier of fact could find for Judge Kendall. Judge Kendall filed his timely notice of appeal on June 17, 2010.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4 § 32(a). Since the May 27, 2010 judgment constitutes a final judgment, this Court possess jurisdiction over Judge Kendall's appeal.

■ ■ Our standard of review in examining the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). Likewise, when a case involves the interpretation of the United States Constitution our standard of review is plenary.[4] *Latalladi v. People*, 51 V.I. 137, 141 (V.I. 2009). A motion for a directed verdict should normally be "granted only when viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury

---

[3] The jury, however, returned a verdict in favor of Tsidulko and against Judge Kendall. As such, the articles involving Judge Kendall's bail decisions with regards to Chris Carty — Counts I and VII — are not at issue on this appeal. (J.A. at 363-64.) The allegations relating to articles written by Tsidulko in Counts IV, VI, and IX are also not at issue on this appeal. (J.A. at 368, 370, 374.)

[4] The Bill of Rights of the Constitution of the United States, contained in the Revised Organic Act of 1954 and statutorily conferred by Congress, "expresses the congressional intention to make the federal Constitution applicable to the Virgin Islands to the fullest extent possible consistent with its status as a territory." *In re Brown*, 439 F.2d 47, 50-51, 8 V.I. 313 (3d Cir. 1971).

reasonably could find liability." *Corriette v. Morales*, 50 V.I. 202, 205 (V.I. 2008) (internal quotation marks omitted). In cases involving First Amendment considerations, however, the United States Supreme Court has clearly established that judges "must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of 'actual malice.' " *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 511, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984). While the parties have devoted a significant amount of their arguments discussing whether *Bose*'s "independent review" should be extended to findings of falsity and opinion,[5] Judge Kendall's failure to sufficiently establish actual malice makes such a determination unnecessary.

## B. The Directed Verdict Judgment

Judge Kendall appeals the Superior Court's judgment granting the Daily News and Blackburn's motion for a directed verdict. He argues that there was sufficient evidence presented at trial to support the jury's verdict that the Daily News and Blackburn defamed him through the publication of a series of newspaper articles between April 2004 and February 2009.

In the Virgin Islands, a claim of defamation requires: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." RESTATEMENT (SECOND) OF TORTS § 558. *See McDowell v. Paiewonsky*, 769 F.2d 942, 945-46 (3d Cir. 1985). Additionally, the Constitution imposes further requirements to prove defamation of a public official independent of those required under state or territorial law. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 11-17, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990). First, where the statements are uttered by a media

---

[5] The United States Supreme Court has never directly addressed this issue, and the few courts of appeals that have addressed the issue have reached opposite results. *Compare Veilleux v. Nat'l Broad. Co.*, 206 F.3d 92, 106-08 (1st Cir. 2000) (extending *Bose* to findings of falsity and opinion), *with Lundell Mfg. Co., Inc. v. Am. Broad. Cos., Inc.*, 98 F.3d 351, 359 (8th Cir. 1996) (declining to extend *Bose* to findings of falsity and opinion).

defendant and involve matters of public concern, the burden of proving the falsity of each statement falls on the plaintiff. *Id.* at 14. Second, only statements that are "provable as false" are actionable; hyperbole and expressions of opinion not provable as false are constitutionally protected. *Id.* at 19-20. Finally, the Constitution "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice.'" *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). Actual malice is a statement made "with knowledge that it was false or with reckless disregard of whether it was false." *Id.* at 280. With respect to "reckless disregard," the Supreme Court has stated:

> A "reckless disregard" for the truth . . . requires more than a departure from reasonably prudent conduct. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. The standard is a subjective one- there must be sufficient evidence to permit the conclusion that the defendant actually had a high degree of awareness of probable falsity. As a result, failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard.

*Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688, 109 S. Ct. 2678, 105 L. Ed. 2d 562 (1989) (internal quotation marks and citations omitted). With these principles in mind, we turn to the articles in dispute.

### 1. *The Daniel Castillo Articles*

Judge Kendall first argues that there was sufficient evidence presented at trial to support the jury's verdict that the Daily News and Blackburn defamed him based on seven articles involving Judge Kendall's bail decision with regard to Daniel Castillo. On April 13, 2007, Castillo appeared in Superior Court for an advice of his rights hearing for the alleged murder of a twelve year old girl, Laquina Hennis. At the time Castillo allegedly murdered the twelve year old girl, he had been released on his own recognizance by Judge Kendall and was awaiting trial on charges of aggravated assault and battery and disturbing the peace. On April 14, 2007, an article by Blackburn appeared in the Daily News

entitled: "Police say Castillo confessed to killing Laquina." (J.A. at 365.) The sub-headline of the article, upon which Judge Kendall now seeks damages for defamation, states: "Despite history of violence, Castillo was released on recognizance in March after arrest in assault case." In the body of the article, Blackburn reported that Castillo's charges for aggravated assault and battery and disturbing the peace arose from an incident where he allegedly attacked his ex-girlfriend in front of his young son. Blackburn reported, "[h]e was arrested in connection with that attack on March 1. The next day, Kendall found probable cause to charge Castillo but released him pending trial — despite Castillo's history of violence including charges of rape, assault and weapons violations." The article then goes on in detail about the allegations surrounding Castillo's attack of his ex-girlfriend. After which, the article states:

> Kendall released Castillo on his own recognizance.
>
> Two years earlier, in 2004, Castillo was accused of repeatedly raping a mentally challenged woman at gunpoint. Court documents indicate that he accepted a plea deal. The V.I. Attorney General's Office dropped 10 charges against Castillo — including first-degree rape, first-degree assault, robbery, burglary, and weapons charges — in return for Castillo pleading guilty to a third-degree assault charge.
>
> [The Attorney General] said [on April 13, 2007] that witness problems in that case led prosecutors to conclude that third-degree assault was the only charge they could prove in court.[6]

(J.A. at 365.)

Although the above is only a description of the contents of the April 14, 2007 article, the remaining six articles involving Judge Kendall's bail decision with regard to Castillo, upon which he is suing, include substantially similar language. (J.A. at 365-66, 369, 371, 375-77.) The sting at the center of each of these articles, Judge Kendall claims, is the implication or innuendo that he released Castillo on his own recognizance "despite" having full knowledge of Castillo's criminal history. Judge

---

[6] The article also revealed that, in 2002, Castillo had been charged with possession of stolen property and interfering with an officer discharging his duties. Castillo pled guilty to possession of stolen property.

Kendall argues that the record before him at the time he released Castillo on his own recognizance only showed a charge for possession of stolen property, to which Castillo had plead guilty, and a charge for first degree rape with "no known disposition." Further, Judge Kendall asserts that he had inquired about the first degree rape charge at Castillo's advice of rights and the prosecutor indicated that the charge had been dismissed. Thus, Judge Kendall contends, Blackburn's articles stating that "Kendall released Castillo despite a history of violence," or variations thereof, suggest or imply that Judge Kendall was fully aware of the details surrounding Castillo's criminal history when he released him on his own recognizance.[7]

■ It is important to note at the outset that none of the articles cited by Judge Kendall directly state that he was aware of the facts surrounding Castillo's first degree rape charge, which is the information Blackburn relied on in characterizing Castillo as having a "history of violence." Instead, Judge Kendall argues that Blackburn's reporting of the facts surrounding Castillo's first degree rape charge, in conjunction with Judge Kendall's decision to release Castillo on his own recognizance, implies that Judge Kendall was fully aware of those facts when he made the decision. Accordingly, in order for Judge Kendall to prevail on his claim that the Daily News and Blackburn defamed him by implying that he was fully aware of the facts surrounding Castillo's first degree rape charge at the time he released Castillo on his own recognizance, Judge Kendall must show: 1) that the articles were "reasonably capable of sustaining that meaning," and 2) that a jury could reasonably find by clear and convincing evidence that the Daily News and Blackburn "intended to convey the defamatory impression." *See Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1063-64 (9th Cir. 1998) ("[N]o actual malice where journalists unknowingly mislead the public." (quoting *Eastwood v. Nat'l Enquirer Inc.*, 123 F.3d 1249, 1256 (9th Cir. 1997))); *see also Tucker v. Fischbein*, 237 F.3d 275, 286 (3d Cir. 2001); *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092-93 (4th Cir. 1993); *White v. Fraternal Order of*

---

[7] Judge Kendall does not contest Blackburn's use of the phrase "history of violence" to describe the alleged facts surrounding Castillo's first degree rape charge. Instead, Judge Kendall only asserts that the alleged facts surrounding Castillo's first degree rape charge were not presented to him at the time he released Castillo on his own recognizance pending trial for charges of aggravated assault and battery and disturbing the peace.

*Police*, 909 F.2d 512, 520, 285 U.S. App. D.C. 273 (D.C. Cir. 1990); *Saenz v. Playboy Enterprises, Inc.*, 841 F.2d 1309, 1318 (7th Cir. 1988) ("If a plaintiff official must establish by clear and convincing evidence that the defendants acted with actual knowledge of or in reckless disregard for the falsity of their accusations, it follows that where the plaintiff is claiming defamation by innuendo, he also must show with clear and convincing evidence that the defendants intended or knew of the implications that the plaintiff is attempting to draw from the allegedly defamatory material.").

■ Even if we were to find that the articles cited are reasonably capable of implying that Judge Kendall was aware of the facts surrounding Castillo's criminal history when he released Castillo on his own recognizance, Judge Kendall has failed to produce clear and convincing evidence that the Daily News or Blackburn intended to convey this impression.[8] Judge Kendall argues that Blackburn's own testimony clearly and convincingly establishes that she intended to convey the implication that Judge Kendall was aware of Castillo's history of violence when he released Castillo on his own recognizance. Specifically, Judge Kendall purports that "Blackburn testified that she knew that the articles conveyed that Judge Kendall acted despite knowing Castillo's history of violence, and that she intended that meaning." (Appellant's Br. at 25 n.13.) This contention, however, is a gross mischaracterization of Blackburn's testimony. At trial, Judge Kendall's lawyer only asked Blackburn if she intended to imply that Judge Kendall had released Castillo despite his history of violence. Nowhere in the record does it appear that Judge Kendall's counsel asked whether Blackburn intended her articles to imply that Judge Kendall knew that Castillo had a history of violence, but released him anyway. In fact, in response to a line of questions from Judge Kendall's counsel about what she intended to convey in her articles, Blackburn stated: "what I'm saying is Mr. Castillo had a history of violence and Judge Kendall did choose to release him." (J.A. at 2907.) Judge Kendall thus relies on Blackburn's admission that

---

[8] The Superior Court held that the Castillo articles were, as a matter of law, materially true and not reasonably capable of inferring that Judge Kendall knew about Castillo's prior criminal history when he released Castillo on his own recognizance. While we express some reservations with this determination, we need not address this issue because Judge Kendall has failed to clearly and convincingly establish actual malice.

she intended to convey exactly what she wrote — that Judge Kendall released Castillo despite his history of violence — to establish that she intended to convey that Judge Kendall *knew* about Castillo's history of violence at the time he released him. We find this argument unpersuasive in establishing actual malice.

Judge Kendall also puts forth three other grounds which he argues sufficiently establish actual malice. First, he claims that Blackburn had no source for the statement that he released Castillo despite a history of violence. Second, Judge Kendall contends that Blackburn's insistence that her articles are accurate, despite the uncontroverted fact that he had not been provided with Castillo's history of violence, is itself proof of actual malice. Third, Judge Kendall points to a portion of Blackburn's notes on Castillo which contain the notation "concrete" next to the date of Castillo's advice of rights before Judge Kendall. He argues that the notation indicates that Blackburn had a serious question as to the truth of the publication. These arguments, however, fail to establish that Blackburn intended to convey that Judge Kendall had released Castillo on his own recognizance despite *knowing* his history of violence. Instead, they all presuppose this conclusion without actually proving it. Accordingly, we find these arguments unpersuasive.

After reviewing the entire record, including the arguments raised by Judge Kendall, we find that Judge Kendall has failed to present sufficient evidence to allow a rational jury to find by clear and convincing evidence that the Daily News or Blackburn intended to convey that Judge Kendall released Castillo despite knowing his history of violence. We therefore affirm the Superior Court's judgment that there was insufficient evidence presented at trial to support the jury's verdict that the Daily News and Blackburn defamed Judge Kendall based on the articles involving his bail decision regarding Castillo.[9]

### 2. *The Ashley Williams Article*

Judge Kendall also appeals the May 27, 2010 Superior Court judgment finding that there was insufficient evidence presented at trial to support

---

[9] The Superior Court also held that the articles involving Judge Kendall's bail decision regarding Castillo are protected by the fair reporting privilege. However, because we conclude that Judge Kendall has failed to clearly and convincingly establish that the Daily News or Blackburn intended to convey that he released Castillo despite knowing his history of violence, we need not reach this issue.

the jury's verdict that the Daily News and Blackburn defamed him based on a November 21, 2006 story titled: "Convict who judge freed for weekend in standoff with police."[10] (J.A. at 362.) The article describes how Ashley Williams, who was convicted for two counts of rape and one count of assault, was allowed by Judge Kendall "to spend the weekend in the community unsupervised before he was supposed to report to jail [on] Monday." Instead of reporting to jail on Monday, however, Williams barricaded himself in his house and threatened to blow himself up, which resulted in a five hour standoff with police before he was apprehended. Judge Kendall argues that he did not allow Williams to spend the weekend in the community "unsupervised," but rather placed him under house arrest. And that the Daily News and Blackburn's November 21, 2006 article stating that he had released Williams "to spend the weekend in the community unsupervised" was a false and defamatory publication.

Again, even assuming that the statement that Judge Kendall released Williams into the community "unsupervised" was not substantially true, Judge Kendall has still failed to sufficiently establish actual malice.[11] Judge Kendall claims that Blackburn testified that she had no source for her statement, and that that is sufficient for a jury to conclude that Blackburn fabricated it and either knew the statement was false or recklessly disregarded the truth. This claim mischaracterizes both Blackburn's testimony and the facts presented at trial. Blackburn did admit that no one she interviewed used the specific word "unsupervised." But she also testified that she had spoken to the Attorney General and an Assistant Attorney General and they had told her "that Judge Kendall allowed [Williams] to go home for the weekend to get his affairs in order." (J.A. at 2973.) In addition to this information, Blackburn was present during Williams's standoff with police and observed firsthand that

---

[10] On appeal, Judge Kendall points to two articles involving Ashley Williams which he claims defamed him. His amended complaint, however, only alleges that the November 21, 2006 article defamed him. And the Superior Court only addressed the November 21, 2006 article in its May 27, 2010 judgment. Accordingly, we will only consider the November 21, 2006 article on appeal.

[11] The Superior Court held that the statement that Judge Kendall released Williams to spend the weekend in the community unsupervised was substantially true. While we express our reservations over this holding — it is uncontested that Judge Kendall actually ordered that Williams be placed on house arrest — we need not address this issue because Judge Kendall has failed to establish actual malice by clear and convincing evidence.

Williams was in the community unsupervised. Moreover, no one she spoke to, including police, firefighters, and members of the community, mentioned that Williams was under house arrest or that he was being supervised.[12] Thus, Judge Kendall's contention that Blackburn testified that she had no source for her statement that Judge Kendall had released Williams "unsupervised" into the community is not supported by the record. And while further investigation may have allowed Blackburn to more accurately report the specific circumstances surrounding William's release, Judge Kendall has failed to clearly and convincingly establish that the Daily News or Blackburn either knew that the statement was false or recklessly disregarded the truth. *See Harte-Hanks Communications, Inc.*, 491 U.S. at 688 (holding failure to investigate before publishing is not sufficient to prove actual malice); *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S. Ct. 1323, 20 L. Ed. 2d 262 (1968) ("[E]vidence of either deliberate falsification or reckless publication despite the publisher's awareness of probable falsity [is] essential to recovery by public officials in defamation actions.") (internal quotations omitted); *Tucker*, 237 F.3d at 286 ("[F]ailure to investigate, standing alone, does not constitute actual malice.").[13]

 Judge Kendall also argues that Blackburn's destruction of her notes from her conversation with the Attorney General and Assistant Attorney General is sufficient to allow a jury to find that she had

---

[12] In fact, Judge Kendall himself admits that no one was supervising Williams at the time of the standoff, and he was not aware if anyone actually had been supervising or monitoring Williams while he was released.

[13] Judge Kendall contends that the facts of his case are analogous to those in *St. Surin v. V.I. Daily News, Inc.*, 21 F.3d 1309, 30 V.I. 373 (3d Cir. 1994). In *St. Surin*, the article in question falsely attributed a quote to a federal prosecutor and left the impression that the government expected to file criminal charges against the plaintiff. *Id.* at 1318-19. In fact, the government was only reviewing the situation, was not prepared to issue charges, and ultimately proposed only administrative sanctions. *Id.* The record showed no other source for the misrepresentation, and neither the editor nor the reporter was able to identify any basis for the change in the article. *Id.* Thus, the court held a genuine dispute of material fact existed as to whether the Daily News published its story about the plaintiff with a reckless disregard for the truth of the assertion. *Id.* The facts currently before this Court, however, are distinguishable from those in *St. Surin*. In *St. Surin*, the court relied heavily on the fact the record showed no other source for the misrepresentation, and neither the editor nor the reporter was able to identify any basis for the change in the article. In contrast, Blackburn was actually present during William's standoff with police, which allowed her to observe firsthand what was transpiring and to speak with police, firefighters, and members of the community. For this reason, *St. Surin* is not applicable.

manufactured the story. This argument is unpersuasive. First, the parties do not dispute what the Attorney General and Assistant Attorney General told Blackburn — "that Judge Kendall allowed [Williams] to go home for the weekend to get his affairs in order." (J.A. at 2973.) Blackburn freely admitted that neither the Attorney General nor Assistant Attorney General used the word "unsupervised." Second, Judge Kendall presented absolutely no evidence to suggest that Blackburn destroyed her notes to avoid liability or conceal what she had learned from her conversation with the Attorney General and Assistant Attorney General. In contrast, Blackburn testified that she periodically cleans off her desk and throws away notes that she does not need anymore. Furthermore, at the time she threw away her notes from her conversation with the Attorney General and Assistant Attorney General she had no knowledge of the forthcoming lawsuit.[14] The mere fact that Blackburn discarded her notes relating to her conversation with the Attorney General and Assistant Attorney General is not sufficient to clearly and convincingly prove actual malice. Therefore, we affirm the Superior Court's judgment that there was insufficient evidence presented at trial to support the jury's verdict that the Daily News and Blackburn defamed Judge Kendall through the November 21, 2006 article regarding Ashley Williams.[15]

### 3. The Editorial

On April 17, 2007, the Daily News published an editorial entitled: "Judge Kendall should resign." (J.A. at 367.) Judge Kendall claims that although the article was published as an editorial in the Opinion section of the newspaper, the story itself contains statements that either purport to be factual or rely on undisclosed facts. Specifically, the editorial states that Judge Kendall has repeatedly made decisions "that are clearly

---

[14] All of the cases cited by Judge Kendall to support this argument involve facts where it was established that the reporter had destroyed his or her notes *after* learning of the plaintiff's claims. *See Chang v. Michiana*, 900 F.2d 1085, 1088-90 (7th Cir. 1990); *Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d 524, 563 N.W.2d 472, 476-77 (1997); *Murphy v. Boston Herald, Inc.*, 449 Mass. 42, 865 N.E.2d 746, 761 (2007). Judge Kendall has failed to present any evidence that would suggest that Blackburn destroyed her notes after learning about this lawsuit. We thus find reliance on these cases unpersuasive.

[15] The Superior Court also held that the challenged statements are protected by the fair reporting privilege. Again, since Judge Kendall has failed to meet his burden of establishing actual malice by clear and convincing evidence, we need not reach this issue.

unreasonable by any logical measure and he acts with arrogance and disregard for the community he is supposed to serve." The editorial goes on to say that Judge Kendall has

> demonstrated a pattern of highly unusual and inappropriate decisions that in many cases leave us concerned for the very safety of Virgin Islands citizens and the integrity of the territory's Superior Court.
>
> Judge Kendall consistently shows his bias when it comes to cases involving defendants charged with violent acts, especially domestic violence. He routinely eliminates bail for men, even repeat offenders, who are charged with especially violent crimes including sexual abuse crimes.

(J.A. at 367.) The Superior Court held, however, that the statements were constitutionally protected opinion reasonably supported by disclosed facts. Alternatively, the Superior Court held that the only evidence presented at trial indicated that Edwin Crouch was the author of the April 17, 2007 editorial, and that Judge Kendall had failed to put forward any evidence that the statements were made with actual malice.[16] Thus, it dismissed Judge Kendall's claims for defamation in relation to the April 17, 2007 editorial. Judge Kendall appeals this judgment, arguing that the above-mentioned statements are factual in nature and not constitutionally protected opinion. Judge Kendall also contends that he presented sufficient evidence to allow a jury to find that J. Lowe Davis had written the editorial, not Crouch.

 "Under the First Amendment there is no such thing as a false idea." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974). Thus, only statements that are "provable as false" are actionable, and expressions of opinion or hyperbole, not provable as false, are constitutionally protected. *See Milkovich*, 497 U.S.

---

[16] Judge Kendall claims that the trial court did not find that he failed to prove actual malice in the publication. This contention, however, is inaccurate. While the trial court's memorandum opinion does not specifically use the words "actual malice," it states that "since the Plaintiff has failed to present any evidence as to what Mr. Crouch thought at the time he authored the editorial or whether he actually doubted the truth of what he wrote, the Plaintiff cannot support his burden of proof on this claim." (J.A. at 4773.) This language clearly indicates that the trial court found that Judge Kendall had failed to establish that the April 17, 2007 editorial was written with actual malice.

at 19-20. In *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3d Cir. 1985), the Third Circuit stated:

> Although there may be no such thing as a false opinion, an opinion which is unfounded reveals its lack of merit when the opinion-holder discloses the factual basis for the idea. If the disclosed facts are true and the opinion is defamatory, a listener may choose to accept or reject it on the basis of an independent evaluation of the facts. However, if an opinion is stated in a manner that implies that it draws upon unstated facts for its basis, the listener is unable to make an evaluation of the soundness of the opinion. In such circumstances, if the underlying facts are false, the Constitution does not protect the opinion.

Applying these standards to the April 17, 2007 editorial, we agree with the Superior Court that the editorial is a constitutionally protected opinion.

 Judge Kendall contends that the editorial's statement claiming that he shows "bias" in cases involving defendants charged with domestic violence is a factual assertion that he has committed unethical conduct and violated his oath as a judge. The editorial makes no such assertion. Rather, it provides a factual basis for the author's opinion, which is not provable as false. *See Rappaport v. VV Publ'g Corp.*, 223 A.D.2d 515, 637 N.Y.S.2d 109, 110 (N.Y. App. Div. 1996) ("The statements that suggest that plaintiff is biased in favor of police officers as a result of his past work as a lawyer with the Patrolmen's Benevolent Association (PBA), and that plaintiff is too lenient in imposing sentences on officers convicted of crimes are not 'facts' that are capable of being proven true or false; rather, they constitute an opinion that plaintiff's performance as a judge is biased because of his past association with police officers. Since that opinion is based on a fact set forth in the article, namely that plaintiff used to be a PBA lawyer, it is constitutionally protected.") (internal quotation marks and citations omitted); *see also Dodds*, 145 F.3d at 1068 ("[S]tatements of opinion concerning whether a person who holds high public office is fit for that office or is competent to serve in that position are protected under the First Amendment . . . .").

 The editorial clearly states that its basis for stating that Judge Kendall shows "bias" are his decisions where he "routinely eliminate[d] bail for men, even repeat offenders, who [were] charged with especially violent crimes including sexual abuse crimes." (J.A. at 367.) In support of

this statement, the editorial cites Judge Kendall's bail decisions with respect to Castillo and Williams, as well three other men who were released without monetary bail pending trial on charges for domestic violence. The editorial also cites Judge Kendall's views on the purpose of bail. It quotes Judge Kendall as saying that "[t]he purpose of bail is not to punish the defendant (but) to ensure the defendant appears for trial. I am not going to punish anybody prior to being tried and convicted." The editorial then combats this view by noting that victims' rights groups have cited cases which have found that bail would not be punishment if it served to protect the territory's citizens. Finally, the editorial concludes that "Judge Kendall's decisions, especially his policy on bail, may be due to his lack of courtroom experience."[17] Nowhere in the editorial does the author suggest or imply that Judge Kendall's bail decisions amount to unethical conduct or violate his duties and responsibilities as a judge. In fact, the editorial's conclusion that his bail decisions may be attributable to his lack of experience directly contradicts this assertion. Thus, we conclude that the April 17, 2007 editorial stating that Judge Kendall should resign is a constitutionally protected opinion based on disclosed factual assertions.[18] *See Dodds*, 145 F.3d at 1067-68; *Jenkins v. KYW*, 829 F.2d 403, 408-09 (3d Cir. 1987); *Redco Corp.*, 758 F.2d at 972.

Even if we were to find that one or more of the statements discussed above are factual in nature, Judge Kendall has nevertheless failed to present any evidence of actual malice. Judge Kendall claims that there was conflicting evidence presented at trial as to who wrote the editorial. He contends that he presented sufficient evidence to allow a jury to find that J. Lowe Davis, not Crouch, had written the editorial, and that she had written it with malice. In support of this argument, Judge Kendall points to William Brown, an editor for the Daily News, who testified that Davis wrote the local editorials. Again, however, Judge Kendall has

[17] After making this statement the editorial discusses Judge Kendall's legal career leading up to his becoming a Superior Court judge.

[18] Similarly, the statements that Judge Kendall "display[s] an arrogance that we've not seen from any other judge," and his decisions "leave us concerned for the very safety of Virgin Islands citizens and the integrity of the territory's Superior Court," are clearly constitutional protected opinions. *See Milkovich*, 497 U.S. at 19-20, 110 S. Ct. at 2706-07; *Shepard v. Courtoise*, 115 F. Supp. 2d 1142, 1147 (E.D. Mo. 2000) (describing "arrogant" as "imaginative expression and rhetorical hyperbole" that is "not actionable as defamation") (internal quotation marks omitted).

mischaracterized the testimony of a witness. Brown never testified that Davis wrote the April 17, 2007 editorial. In fact, Brown testified that Davis only began writing the local editorials after Jeffery Prosser, the former owner of the Daily News, lost control of the newspaper. Further, it is uncontroverted that Times-Shamrock did not purchase the Daily News from Prosser until June 2008. And Ariel Melchoir, Jr., the publisher of the Daily News from 1977 to 2008, testified that on April 17, 2007, when the editorial was published, Prosser controlled what editorials were being published in the Daily News. Thus, all the evidence presented at trial tended to show that Crouch was the author of the editorial,[19] and Judge Kendall failed to present any evidence that Crouch either knew the statements in the editorial were false or recklessly disregarded the truth.[20] *See Beeton v. District of Columbia*, 779 A.2d 918, 924-25 (D.C. 2001) (holding plaintiff failed to prove actual malice when author "was never called as a witness to confirm that he wrote the article"). We therefore affirm the Superior Court's judgment dismissing Judge Kendall's claims for defamation in relation to the April 17, 2007 editorial.

### 4. The Article on Judge Kendall's Decision to Retire

Finally, Judge Kendall appeals the Superior Court's judgment finding that there was insufficient evidence presented at trial to support the jury's verdict that the Daily News defamed him based on a February 18, 2009 article titled: "Kendall chooses to retire when term ends." (J.A. at 380.) The sub-headline of the article, which Judge Kendall's claim for defamation is based, states: "Three judicial conduct complaints against him still pending." Judge Kendall contends that at the time the article was published the three judicial conduct complaints were no longer pending because the district court had issued a final judgment permanently

---

[19] Davis testified that she did not write the editorial, and that she did not even read it until after Judge Kendall filed his lawsuit. Brown testified that Crouch had been writing the editorials for the Daily News for the majority of the time that he was employed at the paper. Melchoir, the publisher at the time, testified that he assumed that either Prosser or Crouch had written the editorial. Finally, Crouch's name, phone number, and e-mail address even appear on the face of the article, designating him as a member of the "Editorial Board."

[20] This Court is not finding, as a matter of law, that Crouch wrote the editorial, only that there was no evidence presented at trial that would have allowed a reasonable jury to conclude that anyone else had written the article. Thus, while Crouch may not have written the editorial, its author — as well as his or her subjective state of mind — is unknown.

enjoining the Virgin Islands Commission on Judicial Disabilities from conducting any further proceedings on the three complaints made against him.[21] Thus, Judge Kendall claims, the sub-headline was false, misleading, and defamatory.

Even assuming the statement that Judge Kendall had three judicial conduct complaints still pending against him is materially false,[22] he was still required to show by clear and convincing evidence that its author, J. Lowe Davis, either wrote the sub-headline with knowledge that it was false or with reckless disregard of whether it was false.[23] To meet this burden Judge Kendall points to Davis's testimony that she relied solely on the body of the article to write the sub-headline, combined with the fact that the article does not state that the three complaints are "still pending." Thus, Judge Kendall contends that Davis had no source for the headline and recklessly disregarded the truth by publishing it. Judge Kendall, however, has too narrowly read Davis's source for the headline. While he is correct that the February 18, 2009 article does not specifically state that the three complaints are "still pending," the article does provide sufficient factual information upon which Davis could rely in writing the sub-headline. The article states that Judge Kendall filed a lawsuit in the district court to stop the Virgin Islands Commission on Judicial Disabilities from conducting any hearings on complaints made against him, and that the district court ultimately sided with Judge Kendall, finding that the Commission has no authority to remove judges. Finally, the article notes that the district court's decision has been appealed to the

---

[21] Judge Kendall does, however, acknowledge that the district court's final judgment was on appeal to the Third Circuit at the time the article was published.

[22] The Superior Court held that the sub-headline was not materially false. Addressing this issue, however, would require this Court to determine whether *Bose*'s "independent review" extends to findings of falsity and opinion. *See* note 5 *supra*. Moreover, Judge Kendall has failed to establish actual malice by clear and convincing evidence. We thus decline to address this issue. *See Mercer v. City of Cedar Rapids*, 308 F.3d 840, 848-49 (8th Cir. 2002) (declining to address issue of falsity when plaintiff clearly failed to establish actual malice); *Underwager v. Channel 9 Australia*, 69 F.3d 361, 368 (9th Cir. 1995) (same); *Church of Scientology Int'l v. Daniels*, 992 F.2d 1329, 1331-32 (4th Cir. 1993) (same); *Woodcock v. Journal Pub. Co., Inc.*, 230 Conn. 525, 646 A.2d 92, 100 n.11 (1994) (same); *Catalano v. Pechous*, 83 Ill. 2d 146, 419 N.E.2d 350, 355, 360-61 (Ill. 1980) (same); *Fodor v. Leeman*, 179 Ore. App. 697, 41 P.3d 446, 448 (2002) (same).

[23] J. Lowe Davis testified at trial that she was responsible for writing the sub-headline for the February 18, 2009 article.

Third Circuit Court of Appeals. In light of the contents of the entire article, even if, technically speaking, the complaints were not "still pending," we cannot conclude that this was clear and convincing evidence that Davis recklessly disregarded the truth. *See Schiavone Const. Co. v. Time, Inc.*, 847 F.2d 1069, 1090 (3d Cir. 1988) ("An erroneous interpretation of the facts does not meet the standard [for actual malice]." (citing *Time v. Pape*, 401 U.S. 279, 292, 91 S. Ct. 633, 28 L. Ed. 2d 45 (1971))). Accordingly, we find Judge Kendall's argument that Davis had no source for the headline unpersuasive.[24] Moreover, Judge Kendall failed to present any other evidence that Davis wrote the sub-headline with knowledge that it was false or that she "entertained serious doubts as to the truth of [her] publication." *See St. Amant*, 390 U.S. at 731. We therefore affirm the Superior Court's judgment dismissing Judge Kendall's claims for defamation relating to the February 18, 2009 article.

## III. CONCLUSION

Judge Kendall has failed to present sufficient evidence upon which a reasonable jury could clearly and convincingly find actual malice with respect to any of the publications cited above. Therefore, we affirm the Superior Court's judgment granting Appellees' motion for a directed verdict and entering judgment for the Daily News and Blackburn.

---

[24] Judge Kendall also argues that the Daily News knew the complaints were no longer pending because it had previously reported as such in a January 17, 2008 article. The contents of the January 17, 2008 article, however, are almost identical (only summarized) to the information in the February 18, 2009 article, which Davis relied in writing the sub-headline.