**GEORGE R. SIMPSON, Appellant/Defendant**

**v.**

**ANDREW L. CAPDEVILLE, P.C. & ANDREW L. CAPDEVILLE,**
**Appellees/Plaintiffs**

S. Ct. Civil No. 2013-0144

Supreme Court of the Virgin Islands

April 18, 2016

George R. Simpson, Hampton Bays, N.Y., *Pro se.*

ALAN R. FEUERSTEIN, ESQ., Feuerstein & Smith, LLP, Buffalo, N.Y., *Attorney for Appellees.*

HODGE, Chief Justice; CABRET, Associate Justice; and SWAN, Associate Justice.

## OPINION OF THE COURT

(April 18, 2016)

CABRET, *Associate Justice.* George R. Simpson appeals from a Superior Court order holding him in contempt for failing to comply with an earlier order finding him liable for defamation and ordering him to remove several websites containing the allegedly defamatory statements from the Internet. Because Simpson's statements were not defamatory as a matter of law, we reverse the Superior Court's order finding Simpson liable for defamation and vacate the Superior Court's contempt orders.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A dispute between Simpson and the Board of Directors of Sapphire Bay Condominiums West arose in 2003, when Simpson, who owned a

unit at Sapphire Bay, sought to make several alterations to his unit. The Board, however, unanimously denied his request, finding that Simpson provided them with insufficient notice of the change. At the time, Andrew L. Capdeville, Esq., a licensed Virgin Islands attorney, was retained to provide legal counsel to the Board. After the Board denied his request, Simpson mailed a letter to every member of the Board challenging the Board's actions and contending that the Board failed to comply with the condominium's bylaws, particularly with regard to the notice provisions. Simpson's letter also stated that the Board's lawyer — presumably Capdeville — was "dishonest," that Simpson was "concerned that the Board and the Board's lawyer have so little respect for the By-Laws," that "[i]t is a terrible thing to do, and a waste of owner money, for the Board to hire that lawyer and to allow him to write . . . dishonest letters," and that "[t]he owners should never use that dishonest lawyer again."

The next month, Simpson filed a grievance against Capdeville with the Board on Professional Responsibility.[1] Around the same time, Simpson purportedly published a website, first located at www.sapphirebay condos.com and later relocated to www.usvicondos.com, which reprinted the grievance in its entirety.[2] These websites also included numerous other references to Capdeville, including a headline stating "Lawyer Lies"; a sentence stating that Capdeville "had proven himself to be dishonest"; a claim that Capdeville's communications "contained lies and

---

[1] Simpson filed his grievance with the Ethics and Grievance Committee of the Virgin Islands Bar Association, but this Court renamed that body the Board on Professional Responsibility in a December 4, 2014 promulgation order. *See In re Amendment to Rules 203, 207, and 212,* Prom. No. 2014-0006 (V.I. Dec. 4, 2014). We refer to this body by its current name to avoid confusion.

[2] According to testimony at trial, the first website, www.sapphirebaycondos.com, was removed as a result of an injunction issued by a federal district court in a separate trademark infringement suit brought against Simpson. As a result, the site was taken down and the content — including the allegedly defamatory statements about Capdeville — was subsequently published on www.usvicondos.com. As Capdeville notes in his brief, copies of the referenced websites were attached as exhibits to Capdeville's complaint and introduced into evidence at trial, yet Simpson omitted them from the joint appendix. Simpson, as the appellant, had the burden of including all relevant materials in the joint appendix, and because he failed to include these documents in his filings with this Court, we must assume that the allegations in Capdeville's complaint were properly supported. *See Thomas v. Cannonier,* S. Ct. Civ. No. 2007-0042, 2009 V.I. Supreme LEXIS 33 (V.I. Apr. 7, 2009) (unpublished) (collecting cases).

many other statements" that violate ethical rules; a claim that "Capdeville's conduct . . . was so terrible" that "Simpson filed a [g]rievance"; a statement that Capdeville "is a danger to the [Sapphire Bay Condominiums West] owners . . . who have paid for (his) advice" and that his advice resulted in it "breaking the law"; and a claim that Capdeville is a "disgrace" to the legal profession and that law schools should use his conduct as a case study of "[w]hat lawyers should not do."

On April 22, 2004, Capdeville filed a complaint in the Superior Court of the Virgin Islands[3] against Simpson seeking injunctive relief and punitive damages, alleging that the statements Simpson published online about Capdeville and his law firm were defamatory.

The Superior Court held a bench trial on March 9, 2007, with Simpson appearing *pro se*. Before Capdeville presented his case, Simpson orally moved for summary judgment, arguing that his statements were not defamatory because they were his opinions and that he did not own the websites at issue in the case. The Superior Court summarily denied this motion without explanation, and Capdeville presented the testimony of Desmond Maynard, a long-time friend and colleague of Capdeville's, who testified regarding Capdeville's reputation and character for truthfulness.

Capdeville also called Frank Barry, the General Manager at Sapphire Bay Condominiums West, who testified about Capdeville's employment as an attorney for Sapphire Bay, the events leading up to Sapphire Bay's dispute with Simpson, and Sapphire Bay's decision to no longer employ Capdeville. Barry also testified to the content of the statements published on the websites, and testified regarding Capdeville's good reputation and Simpson's negative reputation at Sapphire Bay. Capdeville also called Mary Davies, an employee of Capdeville's law firm, who testified that the law firm lost Sapphire Bay as a client due to the websites, and also testified to Capdeville's good reputation and character. Next, Capdeville took the stand and testified about the effect of the websites on his business

---

[3] Before October 29, 2004, the Superior Court of the Virgin Islands was named the Territorial Court of the Virgin Islands. *See* 2004 V.I. Sess. Laws 179 (Act. No. 6687, § 1(b)) (amending 4 V.I.C. § 2 by substituting "Superior" in place of "Territorial" in the name of the local trial court, effective October 29, 2004). Nevertheless, we refer to the former Territorial Court by its current name to avoid confusion. *See Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 577 n.5 (V.I. 2015) (recounting the Superior Court's history).

and reputation, stating that he was "certain" he lost business due to the statements on the website. He also testified that Simpson had prevailed in his litigation with Sapphire Bay over the alterations he wanted to make to his unit.

Following the presentation of Capdeville's case, Simpson testified at length about his relationship with a person and an entity he claimed owned the websites in question — Randolph Lindsey and the North American Alliance for Honest Corporate Management — and repeated his claim that he merely provided the content to them, but that they ultimately owned the websites and published the allegedly defamatory material. Simpson also reasserted that the statements listed in the complaint were not defamatory because they were "opinions," and that they "[have] protection from defamation."

At the close of trial, the Superior Court instructed both parties to submit proposed findings of fact and conclusions of law. The parties did so, but the Superior Court took no action until a March 11, 2009 status conference, where the court found that "there were defamatory statements that were made via the [I]nternet against [Capdeville], and . . . that [Simpson was] liable for those disparaging remarks." The Superior Court nevertheless found that Capdeville failed to prove damages, and so only awarded one dollar in nominal damages. The Superior Court went on to "issue the cease and desist order for [Simpson] to cease . . . republishing the disparaging statements against Attorney Capdeville on the [I]nternet . . . . [a]nd in the event [Simpson] refuse[s] to do so [he] will be fined $1,000 for the first day and it will double for every day [he] refuse[s]." When Simpson asked if the Superior Court would issue findings of facts and conclusions of law, the judge replied that "[t]hey are all going to be given to you, then you will know what to do when there is a final judgment." While the Superior Court also noted that while Capdeville may be "entitled to punitive damages," the court declined to rule on this issue until the parties conducted further discovery.

When Simpson failed to remove the websites, Capdeville moved to hold him in contempt. At a January 27, 2010 hearing, Simpson contended that he could not remove the websites because they were not under his control, but instead owned by Lindsey. The Superior Court found that Lindsey was Simpson's agent, concluding that Simpson could direct him to remove the websites. Over a year later, on March 30, 2010, the Superior Court issued an order memorializing the finding of liability

482

made at the 2009 status conference, and ordered that Simpson, Lindsey, or "any Internet Service Provider, ISP, Web Hosting Company, and any and all Global, International, or National Internet Service Companies or Corporations or Entities or Media Companies and/or service companies," to "disable[ ] and remove[ ]" the defamatory websites "from the [I]nternet."[4]

After another two years had passed, Capdeville filed a motion for contempt of court and entry of a money judgment against Simpson on August 13, 2012. By this time, the Superior Court judge presiding over the case had recused herself, and another judge was assigned to the case. On December 21, 2012, the Superior Court entered an order and judgment awarding ten dollars in compensatory damages to Capdeville — instead of one dollar as previously announced — and erroneously stating that the court had "dictated findings of fact and conclusions of law into the record" at the March 11, 2009 status conference. Then, on January 29, 2013, without explanation, the Superior Court vacated in its entirety the March 30, 2010 order finding that Simpson had defamed Capdeville.

On May 5, 2013, the Superior Court ordered an award of $10,000 in punitive damages and held Simpson in contempt for failure to take down the websites as ordered in the March 30, 2010 judgment, despite the fact that the Superior Court vacated that judgment on January 29, 2013. For unknown reasons, the Superior Court then vacated its punitive damages award on August 6, 2013, and held a hearing on September 5, 2013, to determine punitive damages.[5] The Superior Court again ordered Simpson and Capdeville to file proposed findings of fact and conclusions of law on September 6, 2013. On September 24, 2013, the Superior Court again awarded Capdeville $10,000 in punitive damages, and fined Simpson $165,800 for contempt — constituting $100 per day for the 1,658 days that Simpson failed to take down the websites between March 11, 2009, and September 24, 2013 — but never issued findings of fact and conclusions of law in support of the finding of liability.

Simpson then filed a timely motion to set aside the judgment under Superior Court Rule 50 on October 21, 2013. Without ruling on this

---

[4] Inexplicably, this order included seven additional websites that were not at issue during the trial.

[5] This Court requested a transcript of this hearing from the Superior Court under Supreme Court Rule 11(c), but this Court was later informed that this hearing was not transcribed.

motion, the Superior Court entered two orders on November 23, 2013. The first simply repeated the September 24, 2013 order, and the second denied all pending motions as moot and administratively closed the case. Simpson filed a timely notice of appeal on December 18, 2013.[6] *See* V.I.S.Ct.R. 5(a)(4).

## II. JURISDICTION

■ "The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). The September 24, 2013 order awarding punitive damages and fining Simpson for contempt constitutes a final judgment that "dealt with all of the issues in the suit . . . and left 'nothing to do but execute the judgment,' " and so this Court has jurisdiction over this appeal.[7] *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 747 (V.I. 2014) (quoting *Rojas v. Two/Morrow Ideas Enters.*, 53 V.I. 684, 691 (V.I. 2010)).

## III. DISCUSSION

Simpson makes several arguments on appeal, asserting that the Superior Court's contempt order must be vacated because it is impossible for him to comply with the order as he is not the owner of the websites and is unable to remove them. Simpson also makes numerous arguments challenging the Superior Court's underlying order finding him liable for

---

[6] That same day, Simpson filed a notice of appeal in *Simpson v. Bd. of Dirs. of Sapphire Bay Condos. W.*, 62 V.I. 728, 730 (V.I. 2015). We dismissed that appeal as untimely because the Superior Court entered the final order in that case on August 6, 2013, and Simpson never filed a post-judgment motion tolling the 30-day deadline to appeal under Supreme Court Rule 5(a)(4). *Id.* at 731. He filed such a motion in this case though, and so this appeal is timely.

[7] Capdeville argues that Simpson waived all the issues in this appeal by failing to appeal the Superior Court's oral March 11, 2009 order establishing liability, and failing to appeal the Superior Court's written March 30, 2010 order directing him and others to remove the websites. This argument is without merit. As this Court has previously held, "[a] finding of liability that does not also specify damages is not a final decision." *Hard Rock Café v. Lee*, 54 V.I. 622, 627 n.6 (V.I. 2010) (citation and internal quotation marks omitted). And while the Superior Court orally found Simpson liable for defamation at the March 11, 2009 status conference, it expressly deferred a ruling on punitive damages, and that issue was not resolved until September 24, 2013. In other words, had Simpson attempted to appeal the earlier orders, this Court would have dismissed his appeal because they were not final orders. 4 V.I.C. § 32(a).

defamation and ordering him to remove the offending websites, insisting that the Superior Court erred in failing to issue findings of fact and conclusions of law after the bench trial and failing to join the actual owners of the websites in the suit.

To succeed on a defamation claim under Virgin Islands law, a party must show: "a false and defamatory statement concerning another"; "an unprivileged publication to a third party"; "fault amounting at least to negligence on the part of the publisher"; and "either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Joseph v. Daily News Publ'g Co.*, 57 V.I. 566, 585-87 (V.I. 2012) (citations and internal quotation marks omitted); *see id.* at 585 n.10 (explaining that these basic elements of defamation were adopted after examining the factors first outlined in *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011)). Additionally, because the First Amendment to the United States Constitution protects the freedom of expression in the Virgin Islands, a party cannot succeed on a defamation claim if doing so would infringe on this fundamental right.[8] *New York Times Co. v. Sullivan*, 376 U.S. 254, 298, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964).

Although Simpson does not explicitly raise a First Amendment challenge in his appellate brief, he argued at several points during the Superior Court proceedings that his statements were protected opinions that could not give rise to liability for defamation. While the failure to properly brief an issue on appeal would typically constitute waiver, this Court "at its option, may notice an error not presented that affects substantial rights." V.I.S.CT.R. 22(m). This Court is particularly reluctant to reach waived issues in civil cases since the interests at stake are not as significant as in criminal cases, where a party appealing a conviction faces

---

[8] The First Amendment provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." The United States Supreme Court has held that the Fourteenth Amendment incorporates this fundamental protection against state governments, preventing them from restricting speech in the same manner it prevents the federal government from doing so. *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 723-24, 51 S. Ct. 625, 75 L. Ed. 1357 (1931). With regard to the Virgin Islands, Congress provided in section 3 of the Revised Organic Act of 1954 that the First Amendment applies against the territorial government to the same extent as it does against state and federal governments. 48 U.S.C. § 1561.

imprisonment or other criminal sanction after an unsuccessful appeal. But in the past we have reached waived issues in civil cases in rare instances where the waived issue impacts a fundamental constitutional right, as it would here if we failed to consider the First Amendment implications of the Superior Court's finding of liability. *See, e.g., Dennie v. Swanston,* 51 V.I. 163, 169 (V.I. 2009); *accord Brookhart v. Janis,* 384 U.S. 1, 4, 86 S. Ct. 1245, 16 L. Ed. 2d 314 (1966) ("There is a presumption against the waiver of constitutional rights.").

█ Reaching this issue is all the more appropriate here since Simpson is proceeding without the assistance of counsel, *see Appleton v. Harrigan,* 61 V.I. 262, 267 (V.I. 2014), and this Court — like all appellate courts reviewing defamation verdicts — "has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 17, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990) (quoting *Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485, 499 (1984)) (ellipsis and internal quotation marks omitted). Despite the fact that Simpson asserted more than once that his statements were protected opinions, the Superior Court never considered the First Amendment implications of its finding of liability. But regardless, as questions of law, we examine the First Amendment issues *de novo,* without any deference to the Superior Court. *Joseph,* 57 V.I. at 584 ("The imposition of the independent examination rule merely allows this Court . . . to perform the same analysis *de novo* . . . and does not require that this Court make any factual findings or weigh the evidence in the record."). Whether an allegedly defamatory statement is one of opinion or fact is also a question of law we review *de novo. See Gardner v. Martino,* 563 F.3d 981, 986 (9th Cir. 2009); *Riley v. Harr,* 292 F.3d 282, 291 (1st Cir. 2002) ("[T]he courts treat the issue of labeling a statement as verifiable fact or as [protected] opinion as one ordinarily decided by judges as a matter of law." (quoting *Gray v. St. Martin's Press, Inc.,* 221 F.3d 243, 248 (1st Cir. 2000))).

█ In conducting this review of the record, appellate courts "must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment." *Kendall v. Daily News Publ'g Co.,* 55 V.I. 781, 787 (V.I. 2011) (quoting *Bose,* 466 U.S. at 511). In this case, the Superior Court failed to issue any findings of fact and conclusions of law explaining its finding that Simpson

486

was liable for defamation and ordering him to remove the websites. This alone constitutes reversible error because "meaningful review . . . is not possible where the trial court fails to sufficiently explain its reasoning."[9] *James v. Faust*, 62 V.I. 554, 559 (V.I. 2015) (quoting *In re Q.G.*, 60 V.I. 654, 660 (V.I. 2014)) (collecting cases). But we decline to reverse on that ground because even if we assume that the Superior Court accepted every one of Capdeville's contentions at trial as true, Capdeville failed to present evidence "sufficient to cross the constitutional threshold," and similarly failed to meet his burden of proving that Simpson's statements were actionable under Virgin Islands law.

██ ██ This is because under both the First Amendment and Virgin Islands law, "only statements that are provable as false are actionable." *Kendall*, 55 V.I. at 788 (citation and internal quotation marks omitted); *see also Farah v. Esquire Magazine*, 736 F.3d 528, 534-35, 407 U.S. App. D.C. 208 (D.C. Cir. 2013) ("Where a statement is so imprecise or subjective that it is not capable of being proved true or false, it is not actionable in defamation." (citing *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 624-26, 344 U.S. App. D.C. 245 (D.C. Cir. 2001)). "[H]yperbole and expressions of opinion not provable as false" fail to meet this actionability element of a defamation claim, and are also constitutionally protected. *Kendall*, 55 V.I. at 788. To cross this constitutional threshold, Capdeville[10] had the burden of proving that the statements were false as part of his case-in-chief at trial. *Bose*, 466 U.S. at 511.

---

[9] While the Superior Court stated in its December 21, 2012 judgment and in one of its April 2, 2013 orders that such findings were made, a review of the March 11, 2009 transcript reveals that this is not the case. Consequently, by proceeding as if factual findings were made, when in fact they were not, the Superior Court committed reversible error. *Cf. Harris v. Garcia*, S. Ct. Civ. No. 2008-0082, 2010 V.I. Supreme LEXIS 3 (V.I. Jan. 14, 2010) (unpublished) (reversing the Superior Court for dismissing a case based on judge's mistaken belief that certain documents had not been filed with the court); *Rivera-Mercado v. Gen. Motors Corp.*, 51 V.I. 307, 312 (V.I. 2009) (reversing the denial of motion based on the Superior Court's failure to consider affidavits filed by the plaintiff, as demonstrated by court's "patently incorrect" finding that affidavits had never been filed).

[10] Typically, a professional whose "activities and public profile are much like countless members" of the profession are considered private persons for purposes of the First Amendment. *Hutchinson v. Proxmire*, 443 U.S. 111, 135, 99 S. Ct. 2675, 61 L. Ed. 2d 411 (1979). An attorney, except where the attorney's actions substantially exceed those deemed typical of general legal practice, is treated as a private figure for the purposes of the First Amendment. *Cf. Carey v. Hume*, 390 F. Supp. 1026, 1028 (D.D.C. 1975) (general counsel of a union who engaged in extensive public activity considered a "public figure"). In this case,

██ Turning to the merits of Capdeville's action, we first note that to the extent his complaint cites Simpson's "application with the Virgin Islands Bar Association to have [Capdeville] disbarred," and Simpson's statements on the websites indicating that he filed a grievance seeking Capdeville's disbarment, the undisputed evidence at trial established that Simpson did in fact file such a grievance. Therefore, that statement is objectively true and Capdeville undoubtedly failed to prove that it was false, making it not actionable under Virgin Islands law. *See Kendall,* 55 V.I. at 787 ("[A] claim of defamation requires . . . a *false* and defamatory statement concerning another." (emphasis added)).

██ Capdeville further cited approximately 12 statements he claims were published on one or more websites owned and controlled by Simpson. These statements ranged from accusing Capdeville of being a "liar" who has "proven himself to be dishonest," to statements referring to Capdeville as a "disgrace," a "danger," and insisting that his conduct "was so terrible" that it "should be used . . . as an example of what Lawyers should not do." But "hyperbole and expressions of opinion" are typically "not provable as false," and are therefore not actionable. *Kendall,* 55 V.I. at 788.

██ While calling a private individual a liar could, in some very limited circumstances, permit recovery for defamation, such statements must still be provable as false in order to constitute defamation under Virgin Islands law and to survive First Amendment scrutiny. *Kendall,* 55 V.I. at 787; *Milkovich,* 497 U.S. at 19. In this case, we can easily conclude as a matter of law that all of Simpson's statements are opinions representing subjective viewpoints that cannot be proved as false. Instead, they clearly represent personal opinions and beliefs. *See Haynes v. Alfred A. Knopf, Inc.,* 8 F.3d 1222, 1227 (7th Cir. 1993) ("[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." (collecting

there is nothing in the record to indicate that Capdeville should be considered a "public figure" or "public official" for First Amendment purposes, unlike the plaintiff in *Kendall,* who was suing over statements made about him as a public official. *See Kendall,* 55 V.I. at 787-88. Therefore, while Capdeville — like the plaintiff in *Kendall* — was required to prove that the allegedly defamatory statements were false in order to prevail, Capdeville — unlike the plaintiff in *Kendall* — was not required to prove that Simpson published his statements with actual malice. *Id.*

cases)); *see also Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995) ("concluding that when an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment.").

Similarly, a headline stating "Lawyer Lies" and an article claiming that Capdeville is a "liar" who has "proven himself to be dishonest," also fail to amount to actionable statements that can be proved as false because "the term 'lying' applies to a spectrum of untruths including 'white lies,' 'partial truths,' 'misinterpretation,' and 'deception.' " *Underwager v. Channel 9 Australia*, 69 F.3d 361, 367 (9th Cir. 1995). "As a result, the statement is no more than nonactionable rhetorical hyperbole, a vigorous epithet used by those who considered [the plaintiff's] position extremely unreasonable." *Id.* (citation omitted); *see also Sullivan v. Conway*, 157 F.3d 1092, 1097 (7th Cir. 1998) ("[T]o say that he is a very poor lawyer is to express an opinion that is so difficult to verify or refute that it cannot feasibly be made a subject of inquiry by a jury." (citations omitted)); *Gardner*, 563 F.3d at 989 ("lying" statements were not sufficiently factual to imply a false factual assertion in the context of "loose, hyperbolic statements . . . which were an obvious exaggeration"); *James v. San Jose Mercury News, Inc.*, 17 Cal. App. 4th 1, 20 Cal. Rptr. 2d 890, 896-98 (1993) (article describing lawyer as engaging in "sleazy, illegal, and unethical practice" fell into protected zone of "imaginative expression" or "rhetorical hyperbole"); *accord Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 284-86, 94 S. Ct. 2770, 41 L. Ed. 2d 745 (1974) (use of the word "traitor" could not form the basis of a defamation action since it was used "in a loose, figurative sense" and was "merely rhetorical hyperbole, a lusty and imaginative expression of . . . contempt"); *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14, 90 S. Ct. 1537, 26 L. Ed. 2d 6 (1970) (the word "blackmail" is no more than "rhetorical hyperbole"); *Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union*, 39 F.3d 191, 196 (8th Cir. 1994) (" 'Unfair' is a term requiring a subjective determination and is therefore incapable of factual proof.").

Accordingly, because Capdeville is unable to satisfy his burden of proving that the allegedly defamatory statements are "false," as required in order to prove a defamation action in the Virgin Islands, his action fails

as a matter of law.[11] Therefore, we reverse the Superior Court's finding that Simpson is liable for defaming Capdeville and reverse the subsequent orders directing Simpson to remove the websites containing these statements from the Internet. And because we reverse the underlying finding of liability, we must also vacate the Superior Court's subsequent orders holding Simpson in contempt for failing to remove the websites. *Crucians in Focus, Inc. v. VI 4D, LLLP*, 57 V.I. 529, 538-39 (V.I. 2012) (citing *In re Drue*, 57 V.I. 517, 527-28 (V.I. 2012)). On remand, we direct the Superior Court to dismiss Capdeville's complaint with prejudice.

## IV. CONCLUSION

The statements at issue in the underlying defamation action are not defamatory as a matter of law because the statements are non-actionable hyperbole and opinions incapable of being proven as false. Thus, these statements both fail to satisfy the requirements of defamation under Virgin Islands law, and are entitled to First Amendment protection. Therefore, we reverse the Superior Court's order finding Simpson liable for making defamatory statements against Capdeville and vacate the resulting contempt sanctions. We further remand with directions that the Superior Court dismiss Capdeville's complaint with prejudice.

---

[11] Because Capdeville failed to demonstrate that Simpson's statements were actionable, we need not determine whether they were also privileged because they were initially made as part of his grievance to the Board on Professional Responsibility.